1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                      FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   GARY LEE BEAVERS,                          Case No.  1:21-cv-00650-HBK (PC)

12                  Plaintiff,                   SCREENING ORDER DIRECTING THE
                                                FILING OF AN AMENDED COMPLAINT;
13          v.
                                                STAND ON THE COMPLAINT AND
14   OFFICER HOSEY, ET AL.,                      VOLUNTARILY DISMISS DEFENDANTS
                                                AND OTHER CLAIMS DEEMED NOT
15                  Defendants.                  COGNIZABLE; OR,

16                                              STAND ON COMPLAINT SUBJECT TO
                                                COURT RECOMMENDING DISMISSAL OF
17                                              DEFENDANT AND CLAIMS DEEMED NOT
                                                COGNIZABLE TO THE DISTRICT COURT[1]
18
                                                (Doc. No.  1)
19
                                                TWENTY-ONE DAY DEADLINE
20
                                                ORDER DENYING MOTION FOR
21                                              DISCOVERY

22                                              (Doc. No. 12)

23          Pending before the Court for screening under 28 U.S.C. § 1915A is the pro se civil rights

24   complaint filed under 42 U.S.C. § 1983 by Gary Lee Beavers—a prisoner.  (Doc. No. 1,

25   "Complaint").  Upon review, the Court finds the Complaint states an Eighth Amendment failure

26   to protect claim against Defendants Hosey, Espinosa, and Mendoza in this action but fails to state

27   _____

28   [1] This matter was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302
     (E.D. Cal. 2022).

1  any other related and cognizable claims to proceed at this time.  The Court affords Plaintiff the

2  option to file an amended complaint, file a notice to proceed only on his claims deemed

3  cognizable, or stand on his Complaint subject to the Court recommending the district court

4  dismiss this action.

### PLAINTIFF'S MOTION FOR DISCOVERY

6        Because the requested relief in Doc. No. 12 is for Defendant to respond to Plaintiff's

7  discovery requests, the Court construes it as a Motion for Discovery.  A motion's

8  "nomenclature is not controlling." *Miller v. Transamerican Press, Inc.*, 709 F.2d 524, 527 (9th

9  Cir. 1983) (quoting *Sea Ranch Ass'n v. Cal. Coastal Zone Conservation Comm'ns*, 537 F.2d

10  1058, 1061 (9th Cir. 1976)).  Instead, we "construe [the motion], however styled, to be the type

11  proper for the relief requested." *Id.*  In the interest of judicial economy, the Court typically does

12  not begin the discovery process until the operative complaint has been screened, any eligible

13  Defendants have been served, and those Defendants have answered the complaint.  *See*

14  *Hernandez v. Williams*, 2019 WL 5960089 (S.D. Cal. April 27, 2022).  Because no Defendant has

15  yet been served, Plaintiff's request for discovery is premature and will be denied without

16  prejudice.

### SCREENING REQUIREMENT

18        A plaintiff who commences an action while in prison is subject to the Prison Litigation

19  Reform Act ("PLRA"), which requires, *inter alia*, the court to screen a complaint that seeks relief

20  against a governmental entity, its officers, or its employees before directing service upon any

21  defendant.  28 U.S.C. § 1915A.  This requires the court to identify any cognizable claims and

22  dismiss the complaint, or any portion, if is frivolous or malicious, if it fails to state a claim upon

23  which relief may be granted, or if it seeks monetary relief from a defendant who is immune from

24  such relief.  *See* 28 U.S.C. §§ 1915A(b)(1), (2).

25        At the screening stage, the court accepts the factual allegations in the complaint as true,

26  construes the complaint liberally, and resolves all doubts in the plaintiff's favor. *Jenkins v.*

27  *McKeithen*, 395 U.S. 411, 421 (1969); *Bernhardt v. L.A. County*, 339 F.3d 920, 925 (9th Cir.

28  2003).  The Court's review is limited to the complaint, exhibits attached, and materials

incorporated into the complaint by reference, and matters of which the court may take judicial notice. *Petrie v. Elec. Game Card, Inc.*, 761 F.3d 959, 966 (9th Cir. 2014); *see also* Fed. R. Civ. P. 10(c). A court does not have to accept as true conclusory allegations, unreasonable inferences, or unwarranted deductions of fact. *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981). Critical to evaluating a constitutional claim is whether it has an arguable legal and factual basis. *See Jackson v. Arizona*, 885 F.2d 639, 640 (9th Cir. 1989).

The Federal Rules of Civil Procedure require only that a complaint include "a short and plain statement of the claim showing the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Nonetheless, a claim must be facially plausible to survive screening. This requires sufficient factual detail to allow the court to reasonably infer that each named defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009). The sheer possibility that a defendant acted unlawfully is not sufficient, and mere consistency with liability falls short of satisfying the plausibility standard. *Iqbal*, 556 U.S. at 678; *Moss*, 572 F.3d at 969. Although detailed factual allegations are not required, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *Iqbal*, 556 U.S. at 678 (citations omitted), and courts "are not required to indulge unwarranted inferences," *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).

The Rules permit a complaint to include all *related claims* against a party and permit joinder of all defendants alleged to be liable for the "same transaction, occurrence, or series of transactions or occurrences" where "any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 18(a) and 20(a)(2) (emphasis added). But the Rules prohibit conglomeration of unrelated claims against unrelated defendants in a single lawsuit. A litigant must file unrelated claims in separate lawsuits.

If an otherwise deficient pleading can be remedied by alleging other facts, a pro se litigant is entitled to an opportunity to amend their complaint before dismissal of the action. *See Lopez v. Smith*, 203 F.3d 1122, 1127-29 (9th Cir. 2000) (en banc); *Lucas v. Department of Corr.*, 66 F.3d 245, 248 (9th Cir. 1995). However, it is not the role of the court to advise a pro se litigant on how

3

1  to cure the defects.  Such advice "would undermine district judges' role as impartial

2  decisionmakers."  *Pliler v. Ford*, 542 U.S. 225, 231 (2004); *see also Lopez*, 203 F.3d at 1131

3  n.13.  Furthermore, the court in its discretion may deny leave to amend due to "undue delay, bad

4  faith or dilatory motive of the part of the movant, [or] repeated failure to cure deficiencies by

5  amendments previously allowed . . . ." *Carvalho v. Equifax Info. Srvs., LLC*, 629 F.3d 876, 892

6  (9th Cir. 2010).

7  **SUMMARY OF THE COMPLAINT**

8        Plaintiff is incarcerated at Wasco State Prison ("WSP"), where the incidents giving rise to

9  this Complaint occurred.  Plaintiff names as Defendants WSP Tower Guard Officer Hosey, WSP

10  correctional officers Mendoza and Espinosa, the Warden of WSP, John Doe Medical Supervisor,

11  and three Sgt. John Does.  (Doc. No. 1 at 1-2)[2].  Plaintiff's Complaint asserts three claims.

12  <u>**Claim 1**</u>

13        On April 7, 2019, Plaintiff was assaulted by inmate Price, who was working as a porter in

14  Plaintiff's building.  (*Id*. at 9).  Plaintiff describes Price as "a 40-year old, 220 pound, very fit,

15  imposing inmate" and describes himself as "a 160-pound, 69-year old inmate with medical

16  issues." (*Id*.).  Officer Mendoza was the main officer in charge of the tier during the shift when

17  the assault occurred, along with Officer Espinosa, a female officer who Plaintiff states had a

18  relationship with Price.  (*Id*. at 10).  Price had assaulted another inmate, a fellow porter, days

19  before this incident and was removed as a porter.  (*Id*.).  Despite prison policy prohibiting inmates

20  involved in fights from serving as porters, Officers Mendoza and Espinosa had reinstated Price as

21  a porter after the prior assault.  (*Id*.).

22        Prior to the incident, Price had borrowed a jar of coffee from Plaintiff.  (*Id*.).  When

23  Plaintiff asked for Price repay him on April 7, Price became enraged and yelled, "I'll come in

24  there, whip your ass and take all your coffee and anything else I want." (*Id*.).  At the time,

25  Plaintiff states, "[t]he tier was quiet, the TV was off, and only inmate Price was out of his cell.

26  Price was very loud and other inmates in their locked cells all came to their windows to watch."

27

28  _____

[2] The Court refers to the page numbers in the CMECF headers rather than those in Plaintiff's Complaint.

1   (*Id*.).  Plaintiff infers that Defendants Hosey, the tower guard, and Mendoza "could certainly hear

2   the commotion . . . Price was very loud in his threats . . . [i]t would have been impossible for

3   Officer Hosey not to hear the ruckus." (*Id*.).

4         At that point, Price turned to the "tower" where Defendant Hosey was on duty and yelled

5   "open this goddamn door." (*Id*.).  Hosey walked to a window allowing him to see Officer

6   Mendoza and nodded, "apparently acknowledging Officer Mendoza's approval" then returned to

7   his control station.  (*Id*.).  Plaintiff yelled "[d]on't open my cell!" but Hosey electronically opened

8   the door.  (*Id*.).  Plaintiff managed to close the door before Price could enter.  (*Id*.).  Price again

9   yelled to Hosey to open the cell door and again Plaintiff yelled "[d]on't open my door!" but

10   Hosey opened the cell.  (*Id*.).  Price "pulled the door open and began brutally pummeling

11   [Plaintiff's] head. [He] eventually fell back, hitting [his] pelvis on [his] bunk and fell to the

12   floor." (*Id*. at 10).  Plaintiff "received several blows to the left side [his] face, causing the need

13   for stitches.  Two teeth were damaged, Plaintiff's vision in his left eye has diminished from 20/20

14   to 20/100 and no treatment has been provided for his impaired vision.  (*Id*.).  He also suffers

15   "constant ringing" in his ears, damaged vertebrae, and damaged pelvis and hips.  (*Id*. at 11).

16   Plaintiff has "received no treatment for any of these injuries, except for pain medications." (*Id*.).

17         After the assault, Plaintiff was taken to the main office and questioned by a sergeant John

18   Doe #1 who said that he would take a recorded video statement.  (*Id*.).  Plaintiff "looked horrible

19   with blood all over [him], a black eye and visible swelling and bruising." (*Id*.).  After 15 minutes,

20   Defendant Doe #1 returned and stated that the incident did not rise to a level that required a video

21   statement.  (*Id*.).  He advised Plaintiff that the only thing he could do was allow Plaintiff to write

22   a "602 appeal" which would have to be submitted immediately or he would lose the ability to

23   report the incident.  (*Id*.).  Despite being in shock, Plaintiff completed the 602 and gave it to

24   Defendant Doe #1.  (*Id*. at 11).  On April 22, 2019, after Plaintiff's visible wounds had healed

25   except for stitches over his eye, Plaintiff was interviewed by a lieutenant regarding the incident.

26   (*Id*.).  Fearing retaliation, Plaintiff "was hesitant to discuss Mendosa [sic] and Espinosa in regards

27   to the assault." (*Id*.).

28         As relief, Plaintiff seeks "access to outside professionals to treat these conditions during

1   [his] incarceration and after [his] release"; requests that he be "allowed to provide [his] own

2   bedding while incarcerated" because "the agony [he] endure[s] nightly, sleeping on the prison

3   bedding is excruciating"; access to outside psychiatric care and have single cell status; and a

4   monetary award of $20 million to compensate for the mental and physical anguish, and "the

5   probability that [he] will require care for these injuries for the rest of [his] life." (*Id.*).

6   **Claim 2**

7       On October 3, 2018, upon his arrival at WSP Plaintiff handed over his personal property

8   to Defendant Sergeant John Doe #2 who inventoried the possessions of new inmates. (*Id*. at 12).

9   Plaintiff turned over two custom suits made by Giorgio Armani and Hugo Boss, various other

10  clothes, and several law books and "personal property." (*Id.*). Defendant Doe #2 looked at the

11  labels on Plaintiff's clothing and recommended that he "donate" the property. (*Id.*). He said,

12  "you won't ever need this again." (*Id.*). Plaintiff told him that he wanted to keep the property

13  and Defendant Doe #2 advised him that if he wanted to ship his property it would be very

14  expensive and if Plaintiff didn't have enough money his property would be thrown out. (*Id.*).

15  Plaintiff "assured [Defendant Doe #2] that [he] had enough money . . . to pay for it and [he]

16  wanted the package insured, noting the value of the suits." (*Id.*). Defendant Doe #2 stated that a

17  hold would be placed on Plaintiff's trust account and he would not be able to order commissary

18  for up to three months. (*Id.*). When Plaintiff said that was fine Defendant Doe #2 "was visibly

19  upset." (*Id.*).

20      Once Defendant Doe #2 had taken Plaintiff's property, he "pulled up [Plaintiff's] profile

21  on the computer and began loudly enumerating [his] charges – loud enough for the other inmates

22  who had accompanied [him] on the bus [to] hear. He then smiled and said, 'You'll have fun in

23  building #4.'" (*Id.*). Plaintiff notes that "Building #4 turned out to house all the '2-5' gang

24  members, notorious for 'taxing' and beating helpless inmates." (*Id.*).

25      Plaintiff states that he was later advised by prison officials that Defendant Doe #2 took his

26  property to a mailroom where he "writes into a ledger the name and address to ship the property

27  based on an address [Plaintiff] had given them." (*Id*. at 13). However, prison officials are unable

28  to locate the form Plaintiff completed requesting that they insure the package, nor could they

produce a receipt for the items Plaintiff handed over to Defendant Doe #2.  (*Id*.).  Plaintiff states

that, "according to Wasco, [there is] no procedure to log or memorialize the shipping of the

property . . . [t]here is nothing to prevent the officer handling the property from taking the

property home or mailing the property to his house or anyone else's house at the inmate's

expense."  (*Id*.).  Plaintiff states that "[t]he property is now gone" and the prison has "confronted

[him] with numerous roadblocks and delay" in his efforts to locate it.  (*Id*. at 12).

As relief, Plaintiff "would like the property replaced" and he lists eight items along with

their estimated value, totaling approximately $7,300.

**Claim 3**

On January 11, 2019, Plaintiff states that Defendant Sergeant John Doe #3 allowed a

group of five "2-5" gang members to enter his cell and take all of his commissary items,

including the monthly commissary bag that he had just purchased the day before.  (*Id*. at 14).

Plaintiff reported the issue and officers were able to locate much of Plaintiff's property.  (*Id*.).

However, certain items were not recovered.  (*Id*.).  Plaintiff met with a sergeant[3] who "looked at

[Plaintiff's] profile on his computer.  He said that [Plaintiff] was lucky that they only took [his]

property and said if [Plaintiff] pursued it further, [he] would probably be beaten."  (*Id*.).  Plaintiff

states that the same sergeant also told him, "with your charges, you're lucky I don't lock you up

in their cell."  (*Id*. at 4).  Plaintiff filed a 602 grievance, which was rejected, and the officer who

brought him the rejection notice said that Plaintiff needed to "drop it."  (*Id*.).  "By this time,

[Plaintiff's] fear of the Wasco officers led [him] to drop it."  (*Id*.).

As relief, Plaintiff seeks the replacement value of his stolen property, which he values at

$200.  (*Id*. at 15).  He says he also wants to "illustrate a clear pattern of abuse by the officers at

Wasco for inmates they do not like."  (*Id*. at 15).  He notes that he is respectful, obeys the rules,

and does not have any write-ups.  (*Id*.).  He infers that his "persistence in trying to track [his]

property 'lost' by the mailroom made [him] a target of retaliation."  (*Id*.).  Plaintiff also requests

that if he is transferred to another prison that he not be routed through WSP.  (*Id*.).

---

[3] It is unclear from Plaintiff's Complaint if this is the same sergeant who allowed the other inmates to enter
Plaintiff's cell.

**APPLICABLE LAW AND ANAYSIS**

### A. Related Claims and Joinder

The Rules permit a complaint to include all *related claims* against a party and permit joinder of all defendants alleged to be liable for the "same transaction, occurrence, or series of transactions or occurrences" where "any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 18(a) and 20(a)(2) (emphasis added). But the Rules do not permit conglomeration of unrelated claims against unrelated defendants in a single lawsuit. Unrelated claims must be filed in separate lawsuits.

> The controlling principle appears in Fed. R. Civ. P. 18(a): 'A party asserting a claim to relief as an original claim, counterclaim, cross-claim, or third-party claim, may join, either as independent or as alternate claims, as many claims, legal, equitable, or maritime, as the party has against an opposing party.' Thus multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2. Unrelated claims against different defendants belong in different suits, not only to prevent the sort of morass [a multiple claim, multiple defendant] suit produce[s], but also to ensure that prisoners pay the required filing fees-for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees. 28 U.S.C. § 1915(g).

*K'napp v. California Dept. of Corrections*, 2013 WL 5817765, at *2 (E.D. Cal., Oct. 29, 2013), *aff'd sub nom. K'napp v. California Dept. of Corrections & Rehabilitation*, 599 Fed. Appx. 791 (9th Cir. 2015) (alteration in original) (quoting *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007).

Here, Plaintiff asserts claims based on a disparate set of events: a failure to protect claim stemming from an April 2019 assault by another inmate (Claim 1); mishandling of his property by an unidentified sergeant when Plaintiff was first admitted to WSP in October 2018 (Claim 2); and complicity of other correctional staff in the theft of his property in January 2019 by prison gang members (Claim 3). (*See generally* Doc. No. 1). Plaintiff implies that Claims 2 and 3 are connected because the same unidentified sergeant who mishandled his property in Claim 2 also assigned him to the building where he was later robbed, as described in Claim 3. (*Id*. at 7). Plaintiff asserts that the assault that took place in April 2019 was allowed by Wasco officers out

1  of retaliation against Plaintiff "apparently due to [his] persistent attempts to reclaim [his] property

2  (see claim 2)." (*Id.* at 5). Plaintiff's theories regarding the relatedness of the claims are

3  speculative, however, and are insufficient to show that these disparate events arise from the

4  "same transaction, occurrence, or series of transactions or occurrences." Fed. R. Civ. P. 20(a).

5  As set forth more fully below, there is no evidence to support Plaintiff's assertion that the assault

6  against him in April 2019 was driven by a retaliatory motive. Nor does Plaintiff provide any

7  factual support for a connection between the mishandling of his property in Claim 2 and the theft

8  in Claim 3, which occurred three months later, other than claiming that the same sergeant was

9  involved in his housing assignment. Accordingly, the undersigned finds the three claims are

10  misjoined and cannot proceed in a single action.

11         **B. Doe Defendants**

12       Plaintiff does not provide names or other identifying information for several of the

13  Defendants in this matter, including Sgt. John Doe #1-3 and John Doe Medical Supervisor. (*See*

14  Doc. No. 1). "As a general rule, the use of 'John Doe' to identify a defendant is not favored."

15  *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980) (citation omitted). However, situations

16  arise where the identity of alleged defendants will not be known prior to the filing of a complaint.

17  In such circumstances, the plaintiff should be given an opportunity through discovery to identify

18  the unknown defendants, unless it is clear that discovery would not uncover the identities, or that

19  the complaint would be dismissed on other grounds. *Id.* Because it is not clear that Plaintiff

20  would not be able, through discovery, to determine the names of listed Doe defendants, the Court

21  screens the Complaint as to the John Does despite Plaintiff's failure to name them at this stage.

22         **C. Fifth Amendment Deprivation of Property**

23       Liberally construed, Plaintiff alleges two Fifth Amendment unlawful taking of property

24  without just compensation claims based on allegations that Defendant Sergeant John Doe #2 stole

25  or mishandled his property and Defendant Sergeant John Doe #3 allowed other inmates to steal

26  Plaintiff's commissary items and personal property. However, such an action is barred because

27  California provides state prisoners adequate post-deprivation remedies through the Government

28  Claims Act to satisfy the due process clause. *See Hudson v. Palmer*, 468 U.S. 517, 533

(1984) (finding that "a negligent or intentional deprivation of a prisoner's property fails to state a claim under section 1983 if the state has an adequate post deprivation remedy."); *Barnett v. Centoni*, 31 F.3d 813, 816 (9th Cir. 1994) (holding that California has an adequate post-deprivation remedy through the Government Claims Act process.).  Accordingly, Plaintiff cannot state a Fifth Amendment Due Process Claim based on the taking of his property.

### D.  Retaliation

It is clear prisoners have First Amendment rights to file a grievance or civil rights complaint against correctional officials.  *Brodheim v. Cry*, 584 F. 3d 1262, 1269 (9th Cir. 2009).  "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal."  *Rhodes v. Robinson*, 408 F.3d 559, 567–68 (9th Cir. 2005).  A retaliatory motive may be shown by the timing of the allegedly retaliatory act or other circumstantial evidence, as well as direct evidence.  *Bruce v. Ylst*, 351 F.3d 1283, 1288–89 (9th Cir. 2003); *McCollum v. Ca. Dep't of Corr. And Rehab.*, 647 F.3d 870, 882 (9th Cir. 2011).  Mere speculation that a defendant acted out of retaliation is not sufficient.  *Wood v. Yordy,* 753 F.3d 899, 904 (9th Cir. 2014) (citing cases).

#### 1.  Claim 1

Liberally construed, Plaintiff claims that one or more of the officers who were present when he was assaulted by inmate Price "went out of their way to retaliate against [him] apparently due to [his] persistent attempts to reclaim [his] property . . . ."  (Doc. No. 1 at 5).  Plaintiff alleges no direct facts or circumstantial evidence from which this Court can infer that Defendant Hosey, Mendoza, or Espinosa had a retaliatory motive for doing so.  *See McCollum*, 647 F.3d at 882.  While Plaintiff states that he pursued administrative remedies regarding his lost or stolen property, there are no facts connecting his protected First Amendment activity to the alleged failure to protect Plaintiff on April 7, 2019.  Thus, Plaintiff's inference of a retaliatory motive behind the assault on April 7, 2019 is mere speculation, which is insufficient to state a

1    cognizable claim.

2        2.  Claim 3

3        Plaintiff also infers that the failure to locate all of his stolen property was driven by a

4    retaliatory motive, stating, "[t]he only thing I can think of is that my persistence in trying to track

5    my property 'lost' by the mailroom made me a target of retaliation."  (*Id*. at 15).  This suspicion is

6    unsupported by any facts linking Defendant Sergeant John Doe #3's actions to Plaintiff's

7    protected First Amendment activity, nor is there any circumstantial evidence of such a

8    connection.  Indeed, Plaintiff himself advances an alternate explanation for being targeted by

9    Wasco prison officials.  He says that their actions show "a clear pattern of abuse [of] inmates they

10   do not like."  (*Id*.).  The fact that Wasco officials may not like Plaintiff and may have targeted

11   him for harsh treatment does not establish that he suffered adverse actions in response to his First

12   Amendment conduct.  *See Whitfield v. Snyder,* 263 Fed. App'x 518, 522 (7th Cir. 2008)

13   (prisoner's job-related complaints are not protected speech) (citing *McElroy v. Lopac,* 403 F.3d

14   855, 858-59 (7th Cir. 2005) (constitutionally protected activity must relate to a public concern)).

15   Without such a showing, Plaintiff cannot state a claim of First Amendment retaliation.

16       Liberally construed, the unnamed officer's instruction to Plaintiff to "drop" his grievance

17   after it was rejected at the first level asserts a claim of retaliation.  The *sine qua non* of a First

18   Amendment retaliation claim is that an individual's First Amendment rights were chilled by

19   adverse action by a state actor or the threat thereof.  *See Gomez v. Vernon,* 255 F.3d 1118, 1127

20   (9th Cir. 2001) ("a retaliation claim may assert an injury no more tangible than a chilling effect

21   on First Amendment rights"), *citing Hines v. Gomez,* 108 F.3d 265, 269 (9th Cir.1997); *See*

22   *also Burgess v. Moore*, 39 F.3d 216, 218 (8th Cir. 1994) ("[A] threat of retaliation is sufficient

23   injury if made in retaliation for an inmate's use of prison grievance procedures.").  Here, Plaintiff

24   asserts that he initiated the grievance process for the theft of his property but did not appeal his

25   initial rejection after the officer's comment because, "by this time, my fear of the Wasco officers

26   led me to drop it."  (Doc. No. 1 at 14).

27       "By its very nature, a statement that 'warns' a person to stop doing something carries the

28   implication of some consequence of a failure to heed that warning."  *Brodheim v. Cry*, 584 F.3d

11

1262, 1270 (9th Cir. 2009).  Given the various ways that corrections officers can negatively

impact an inmate's life, the mere warning to Plaintiff to "drop it" carried a credible threat of harm

if Plaintiff did not comply.  *See id.*  Because the threat to Plaintiff was explicitly made in response

to his protected first amendment activity, and the threat discouraged Plaintiff from pursuing his

prison grievance, he states a First Amendment retaliation claim against the unnamed officer.

However, Plaintiff fails to provide any identifying information as to who was the "officer who

brought it to me."  Without further information, the Court does not find that discovery would

reveal the name of this unidentified officer.

### E.  Failure to Protect

"[P]rison officials have a duty . . . to protect prisoners from violence at the hands of other

prisoners."  *Cortes–Quinones v. Jimenez–Nettleship,* 842 F.2d 556, 558 (internal quotation marks

and citation omitted), cert. denied, 488 U.S. 823 (1988); *see also Wilson v. Seiter,* 501 U.S. 294,

303 (describing "the protection [an inmate] is afforded against other inmates" as a "conditio[n] of

confinement" subject to the strictures of the Eighth Amendment).  "It is not, however, every

injury suffered by one prisoner at the hands of another that translates into constitutional liability

for prison officials responsible for the victim's safety."  *Farmer v. Brennan*, 511 U.S. 825, 834

(1994).  A prison official violates the Eighth Amendment only when two requirements are met.

First, the deprivation alleged must be, objectively, "sufficiently serious," *Wilson,* 501 U.S., at

298.  Second, a prison official must have a "sufficiently culpable state of mind."  *Farmer*, 511

U.S. at 834.  In prison-conditions cases that state of mind is one of "deliberate indifference" to

inmate health or safety, *Wilson,* 501 U.S. at 302–303; see also *Helling v. McKinney,* 509 U.S. 25,

34–35; *Hudson v. McMillian*, 503 U.S. 1, 5 (1992); *Estelle v. Gamble,* 429 U.S. 97, 106 (1976).

Liberally construed, Plaintiff asserts that Defendants Hosey, Espinosa, and Mendoza

failed to protect him from the assault by inmate Price.  Plaintiff appears to advance two theories

of Defendants' responsibility for the assault on April 7, 2019.  First, Defendants Espinosa and

Mendoza reinstated inmate Price as a porter, contrary to prison regulations, after he assaulted

another inmate just days earlier.  Second, Defendants Hosey and Mendoza allowed inmate Price

to enter Plaintiff's cell on April 7, 2019 despite knowing of his violent history, his violent

intentions on that particular day, and the significant physical disparity between Price and Plaintiff that made it likely Plaintiff would be seriously injured if attacked by Price, which is precisely what occurred.

### 1. Defendant Espinosa

Plaintiff states a cognizable Eighth Amendment failure to protect claim as to Defendant Espinosa.  Espinosa served as one of the officers supervising the tier where Plaintiff was assaulted.  Under an Eighth Amendment failure to protect claim, "[w]hether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence . . . and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious."  *Farmer,* 511 U.S. at 842 (citations omitted).  Here, Defendant Espinosa knew that inmate Price had recently assaulted another inmate, and knew that prison regulations prohibited Price from serving as a porter, but nevertheless reinstated him as a porter.  (Doc. No. 1 at 10).  In other words, she knew that Price posed a heightened risk to the safety of all the inmates in Plaintiff's building.  Nevertheless, she disregarded prison regulations designed to protect prisoners from violent inmates like Price and reinstated him as a porter, giving him ready access to other inmates' cells, including Plaintiff's.  Her actions reflect a deliberate indifference to the safety of Plaintiff and other inmates in violation of the Eighth Amendment, which led to Plaintiff's serious injuries on April 7, 2019.

### 2. Defendant Mendoza

Like Defendant Espinosa, Defendant Mendoza was responsible for reinstating inmate Price as a porter despite his recent assault on another inmate.  Mendoza's decision to do so, in disregard of applicable prison regulations, reflects deliberate indifference to the safety of Plaintiff and other inmates.  Additionally, Defendant Mendoza was aware of the immediate threat that inmate Price posed to Plaintiff on April 7, 2019.  Price was yelling aggressively at Plaintiff, loud enough for Officer Mendoza to hear.  (Doc. No. 1 at 9).  The fact that Price was loudly yelling "I'll come in there, whip your ass and take all your coffee and anything else I want[,]" along with other "threats" (Doc. No. 1 at 10), alerted Defendant Mendoza to the likelihood that Plaintiff

would be assaulted if Price was allowed into his cell.  Mendoza also knew that Price had recently beaten another inmate.  Together, these facts establish that Mendoza had a "sufficiently culpable mind" when he told Officer Hosey to open Plaintiff's cell door so that Price could enter.  As a result, Plaintiff was badly beaten, and suffered long-lasting injuries.  Plaintiff therefore states a cognizable Eighth Amendment failure to protect claim against Defendant Mendoza.

### 3.  Officer Hosey

It is unclear whether Officer Hosey was aware of inmate Price's recent assault on another inmate.  However, on April 7, 2019 he was serving as the tower guard and was thus in a position to see and hear the threat that inmate Price posed to Plaintiff.  He would have heard Price shouting threats at Plaintiff and should have known that Price, much bigger and stronger than Plaintiff, would likely use violence if admitted into Plaintiff's cell.  Despite Plaintiff's pleas not to let Price in, Defendant Hosey twice opened Plaintiff's cell door, ultimately letting Price in where he assaulted Plaintiff.  Thus, liberally construed, Plaintiff states a cognizable Eighth Amendment failure to protect claim against Officer Hosey.

### F.  Deliberate Medical Indifference

Deliberate indifference to the serious medical needs of an incarcerated person constitutes cruel and unusual punishment in violation of the Eighth Amendment.  *See Estelle v. Gamble,* 429 U.S. 97, 104 (1976).  To maintain an Eighth Amendment claim premised on prison medical treatment, the prisoner must show that officials were deliberately indifferent to his medical needs.  A finding of "deliberate indifference" involves an examination of two elements: the seriousness of the plaintiff's medical need (determined objectively) and the nature of the defendant's response (determined by defendant's subjective state of mind).  *See McGuckin v. Smith,* 974 F.2d 1050, 1059 (9th Cir.1992), *overruled on other grounds, WMX Technologies, Inc. v. Miller,* 104 F.3d 1133, 1136 (9th Cir.1997) (en banc).  On the objective prong, a "serious" medical need exists if the failure to treat "could result in further significant injury" or the "unnecessary and wanton infliction of pain."  *Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014).  On the subjective prong, a prison official must know of and disregard a serious risk of harm.  *Farmer v. Brennan,* 511 U.S. 825, 837 (1994).  Such indifference may appear when a prison official intentionally

14

denies or delays care, or intentionally interferes with treatment once prescribed.  *Estelle,* 429 U.S. at 104-05.

If, however, the official failed to recognize a risk to the plaintiff—that is, the official "*should* have been aware" of a risk, but in fact was not—the official has not violated the Eighth Amendment.  *Sandoval v. Cnty. of San Diego*, 985 F.3d 657, 668 (9th Cir. 2021) (emphasis in original).  That is because deliberate indifference is a higher standard than medical malpractice. Thus, a difference of opinion between medical professionals—or between the plaintiff and defendant—generally does not amount to deliberate indifference.  *See Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004).  An argument that more should have been done to diagnose or treat a condition generally reflects such differences of opinion and not deliberate indifference. *Estelle*, 429 U.S. at 107.  To prevail on a claim involving choices between alternative courses of treatment, a plaintiff must show that the chosen course "was medically unacceptable under the circumstances," and was chosen "in conscious disregard of an excessive risk" to the plaintiff's health.  *Hamby v. Hammond*, 821 F.3d 1085, 1092 (9th Cir. 2016).

Neither will an "inadvertent failure to provide medical care" sustain a claim, *Estelle*, 429 U.S. at 105, or even gross negligence, *Lemire v. California Dep't of Corr. & Rehab.*, 726 F.3d 1062, 1082 (9th Cir. 2013).  Misdiagnosis alone is not a basis for a claim of deliberate medical indifference.  *Wilhelm v. Rotman*, 680 F.3d 1113, 1123 (9th Cir. 2012).  A delay in treatment, without more, is likewise insufficient to state a claim.  *Shapley v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985).  It is only when an official both <u>recognizes</u> and <u>disregards</u> a risk of substantial harm that a claim for deliberate indifference exists.  *Peralta v. Dillard*, 744 F.3d 1076, 1086 (9th Cir. 2014) (en banc).  A plaintiff must also demonstrate harm from the official's conduct.  *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006).  And the defendant's actions must have been both an actual and proximate cause of this harm.  *Lemire*, 726 F.3d at 1074.

Liberally construed, Plaintiff appears to assert a claim of deliberate medical indifference based on the limited treatment he received after the assault by inmate Price.  He states that he received stitches for wounds on his face but has not received any treatment for the reduced vision

in his left eye, and the prison "has refused to treat" his broken teeth, offering only to pull them. (Doc. No. 1 at 5).  He also has suffered damage to his vertebrae, pelvis, and hips, but has received no medical care other than pain medication.  (*Id*. at 11).  Looking to the first prong of the deliberate medical indifference analysis, the injuries Plaintiff suffered constitute a serious medical need, particularly considering the significant decrease in his vision and the ongoing pain Plaintiff continues to suffer from his injuries.  (*Id*.).  However, as to the second prong, the Complaint is devoid of facts reflecting that any particular prison official knew of and disregarded a serious risk to Plaintiff's health and wellbeing.  Plaintiff references in his list of Defendants a John Doe Medical Supervisor who was "responsible for denying treatment for the injuries in Claim #2 [sic]."  (*Id*. at 4).  However, conclusory allegations that prison officials denied him treatment are insufficient to establish that any defendant is liable for deliberate medical indifference under the Eighth Amendment.  *See Iqbal*, 556 U.S. at 678 (a claim requires sufficient factual detail to allow the court to reasonably infer that each named defendant is liable for the misconduct alleged).  Accordingly, Plaintiff's allegations are insufficient to state a claim of deliberate medical indifference against John Doe Medical Supervisor.

### G.  Verbal Harassment by Prison Staff

Liberally construing Plaintiff's complaint, he also alleges a violation of the Eighth Amendment when an unnamed sergeant told Plaintiff that in light of his criminal record he was "lucky" that he only had his property stolen, and that if he pursued a claim he would "probably be beaten."  (Doc. No. 1 at 14).  Plaintiff also states that an unnamed correctional officer told him he should "drop it" in reference to his grievance regarding the theft of his property by "2-5" gang members, which resulted in Plaintiff not pursuing the claim.  (*Id*.).

"[V]erbal harassment generally does not violate the Eighth Amendment."  *Keenan v. Hall*, 83 F.3d 1083, 1092 (9th Cir. 1996) (implying that harassment "calculated to . . . cause [the prisoner] psychological damage" might state an Eighth Amendment claim) (citing *Oltarzewski v. Ruggiero*, 830 F.2d 136, 139 (9th Cir. 1987)), *amended by* 135 F.3d 1318 (9th Cir. 1998).  Plaintiff fails to state a claim under the Eighth Amendment because Plaintiff does not allege any facts indicating psychological damage was caused by prison officials' comments, nor does he

16

1    allege the comments were calculated to do so.  *See Keenan*, 83 F.3d at 1092.

2         **H.  Supervisor Liability**

3         Liberally construed, Plaintiff alleges an unspecified claim against the warden of WSP,

4    who is listed among the Defendants in Plaintiff's Complaint.  (Doc. No. 1 at 2).  Liability

5    under section 1983 arises only upon a showing of personal participation by the defendant.  "There

6    is no respondeat superior liability under section 1983."  *Taylor v. List,* 880 F.2d 1040, 1045 (9th

7    Cir.1989) (citations omitted).  A supervisor is only liable for constitutional violations of his

8    subordinates if the supervisor participated in or directed the violations or knew of the violations

9    and failed to act to prevent them.  *Id.*, *see also Starr v. Baca,* 652 F.3d 1202, 1206–07 (9th Cir.

10   2011).  Plaintiff does not allege any facts as to the warden of WSP and therefore his claim fails

11   under Federal Rule of Civil Procedure 8.  Fed. R. Civ. P. 8(a)(2); *see also Iqbal*, 556 U.S. at 678.

12   To the extent Plaintiff asks the Court to find the warden of WSP responsible for the wrongdoing

13   of other WSP officials, the Court cannot do so in light of there being no respondeat theory of

14   liability under section 1983.  Accordingly, for both reasons Plaintiff fails to state a claim against

15   the warden of WSP.

16                                  **OPTIONS**

17        Liberally construing the Complaint and accepting the allegations as true, the Court finds

18   the Complaint sufficiently states an Eighth Amendment claim for failure to protect against

19   Defendants Espinoza, Hosey, and Mendoza.  And while the Complaint arguably states an

20   unrelated First Amendment retaliation claim against an unnamed correctional officer, which

21   would need to be severed, there is utterly no identifying information that suggest discovery would

22   reveal the name of this officer.  Thus, in order to continue the prosecution of this action, Plaintiff

23   must take one of the following three options within twenty-one (21) days from service of this

24   Order.

25        **First Option:**  Because the Court cannot determine that the filing of an amended

26   complaint cannot cure the deficiencies identified above, the Court will afford Plaintiff an

27   opportunity to file an amended complaint if he chooses.  The amended complaint supersedes

28   (replaces) the original complaint and, thus, the amended complaint must be free-standing and

                                      17

complete.  *See Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1989).  Plaintiff should use the Court's approved Prisoner Civil Rights Complaint Form to file his amended complaint and must title it "First Amended Complaint."  Plaintiff may not raise unrelated or new claims or add new defendants if he chooses to file an amended complaint.

**Second Option**:  Plaintiff may file a Notice under Rule 41 stating he intends to stand on his current Complaint as screened herein and proceed only on his Eighth Amendment failure to protect claims against Defendants Espinosa, Hosey, and Mendoza, thereby voluntarily dismissing the remaining Defendants and any other claims the Court deemed not cognizable.  The Court would then order service on Defendants Espinosa, Hosey, and Mendoza and direct Defendants Espinosa, Hosey, and Mendoza to respond to the Complaint.

**Third Option**: Plaintiff may stand on his Complaint subject to the undersigned issuing a Findings and Recommendations to dismiss the remaining Defendants and claims the Court has deemed not cognizable.

If Plaintiff fails to timely respond to this Court Order, *i.e.*, fails to elect and notify the Court of any of the three options, the undersigned will recommend that the district court dismiss this case as a sanction for Plaintiff's failure to comply with a court order and for failing to prosecute this action after its determination that the complaint failed to state a claim, which will count as strike under the PLRA.  *See* Local Rule 110; Fed. R. Civ. P. 41(b).

Accordingly, it is **ORDERED:**

1. Plaintiff's Motion for Discovery (Doc. No. 12) is DENIED as premature without prejudice.

2. Within **twenty-one (21) days** from the date of service of this order, Plaintiff shall take one of the following actions: (a) file a First Amended Complaint; (b); file a Notice that he intends to stand on the Complaint as screened and proceed only on those claims the Court deems cognizable, effectively dismissing Defendant and claims without prejudice under Federal Rule of Civil Procedure 41(a)(1); or (c) file a Notice stating he intends to stand on his current Complaint subject to the undersigned recommending the district court to dismiss certain claims and Defendants for the reasons stated in this Order

3.      If Plaintiff fails to timely comply with this Court Order or seek an extension of time to comply, the Court will recommend the district court dismiss this action for Plaintiff's failure to comply with this Court Order and prosecute this action.

4.      The Clerk of Court shall include a blank civil rights complaint form for Plaintiff's use as appropriate.


Dated:    May 24, 2023

HELENA M. BARCH-KUCHTA
UNITED STATES MAGISTRATE JUDGE

19