UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GARY LEE BEAVERS,<br><br>            Plaintiff,<br><br>    v.<br><br>OFFICER HOSEY, et al.,<br><br>            Defendants. | Case No. 1:21-cv-00650-HBK (PC) ORDER TO ASSIGN A DISTRICT JUDGE<br><br>FINDINGS AND RECOMMENDATIONS TO DISMISS CERTAIN CLAIMS AND DEFENDANTS[1]<br><br>14-DAY OBJECTION PERIOD<br><br>(Doc. No. 14) |

      Pending before the Court for screening under 28 U.S.C. § 1915A is the first amended pro se civil rights complaint filed under 42 U.S.C. § 1983 by Gary Lee Beavers—a prisoner. (Doc. No. 14, "FAC"). The undersigned finds the FAC states an Eighth Amendment failure to protect claim against Defendants Hosey, Espinosa, and Mendoza, but fails to state any other related and cognizable claim. The undersigned recommends that Plaintiff be permitted to proceed only on these claims deemed cognizable and the remaining claims and Defendants be dismissed.

**BACKGROUND AND SUMMARY OF OPERATIVE COMPLAINT**

      Plaintiff initiated this action by filing a prisoner civil rights complaint under 42 U.S.C. § 1983. On May 24, 2023, the undersigned screened the Complaint and found that it stated

---

[1] This matter was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302 (E.D. Cal. 2022).

cognizable Eighth Amendment failure to protect claims against Defendants Hosey, Espinosa, and Mendoza, but no other claims. (*See* Doc. No. 13). The undersigned afforded Plaintiff the option to either (1) file an amended complaint; (2) file a notice that he intends to proceed on the claims found cognizable in the Court's screening order and voluntarily dismiss the remaining claims and Defendants; or (3) stand on his Complaint subject to the undersigned recommending the District Court dismiss the claims and Defendants not deemed cognizable. (*Id*. at 17-18). On June 22, 2023, Plaintiff timely filed a first amended complaint. (Doc. No. 14, "FAC").

The events giving rise to the FAC took place at Wasco State Prison ("WSP"). Plaintiff names as Defendants (1) WSP Tower Guard Officer Hosey, (2) WSP Correctional Officer Mendoza, (3) WSP Correctional Officer Espinosa, (4) Sgt. Doe 1, (5) Sgt. Doe 2, (6) Sgt. Doe 3 and (7) Officer Doe 4.[2] (Doc. No. 14 at 6-7)[3].

The FAC repeats the same three claims from the original Complaint with some additional facts but seeks to add a fourth claim alleging that the acts giving rise to the FAC are connected through a prison-wide conspiracy. The following facts are presumed true at this stage of the screening process.

Claim 1

Plaintiff's initial housing in Building 4 at WSP was determined "by a vindictive Sergeant." (*Id*. at 8 ¶ 1). On April 7, 2019,[4] Plaintiff told fellow inmate Price, that he wanted to be repaid for some coffee that inmate Price had "borrowed" from him. (*Id*. ¶ 3.) Inmate Price, who was a porter in Building 4, refused to do so. (*Id*.). When Plaintiff insisted, inmate Price screamed at Plaintiff loud enough so that "everyone in the building could hear." (*Id*. ¶ 5). Inmate Price threatened Plaintiff, telling him if he didn't watch out, Price would "come in there, whip your ass and take all of your commissary." (*Id*. at 8-9 ¶ 5.) Inmate Price then turned to

---

[2] The FAC refers inconsistently to some of the Doe Defendants (*see* Notes 5 and 6, below). For clarity, the Court therefore refers to them as set forth in this order.
[3] The Court refers to the page numbers in the CMECF headers rather than those in Plaintiff's FAC.
[4] In the FAC, Plaintiff does not allege a date the assault occurred. While an amended complaint must be freestanding and complete, *see Forsyth v. Humana*, 114 F.3d 1467, 1474 (9th Cir. 1997), here the Court liberally construes Plaintiff's pro se pleadings and garners the relevant date from Plaintiff's original Complaint. *See Yong Lor v. Asuncion*, 2018 WL 6177228, at *1 (C.D. Cal. Aug. 21, 2018).

Defendant Hosey, the tower officer controlling the cell doors, and yelled "open this goddamn door." (*Id*. ¶ 6). Plaintiff yelled to Defendant Hosey, "don't open this door." (*Id*.). Plaintiff saw Hosey walk to the window overlooking Defendant Mendosa's office and nod. (*Id*.). Then Hosey walked back to his station. (*Id*.). Plaintiff again shouted to Hosey "don't open this door" but Hosey electronically opened the door. (*Id*.). Before inmate Price could notice, Plaintiff closed the door. (*Id*.). After inmate Price yelled to him, Hosey opened the door again. (*Id*.). This time, Price "rushed into [Plaintiff's] cell, pummeling [him] with both fists." (*Id*. ¶ 7). As a result of the assault, Plaintiff fell backwards onto his metal bunk, hitting his pelvis and falling to the floor. (*Id*.). Inmate Price walked out of the cell. (*Id*.). Plaintiff, who had blood streaming down his face, rushed out of the cell before he could be locked in without access to medical care. (*Id*. ¶ 8). Officer Hosey asked Officer Mendosa, the supervising officer on the tier, if he should sound an alarm. (Id.). After a pause, Officer Mendosa said "yes." (*Id*.).

Plaintiff was evaluated by medical staff and met by Officer Doe 2[5]. (*Id*. ¶¶ 8-9). Sgt. Doe 2 questioned Plaintiff briefly and then told Plaintiff he would need to provide a videorecorded statement and would return with a video camera. (*Id*. at 9). After about 15 minutes, Sgt. Doe 2 returned and stated that the incident did not rise to a level that required a video statement. (*Id*.). He advised Plaintiff that the only thing he could do was allow Plaintiff to submit a "602" which would have to be submitted immediately or he would lose the ability to report the incident. (*Id*. ¶¶ 9-10). Plaintiff "looked horrible; black and blue, swelling all around [his] face, blood all over [his] clothing." (*Id*. ¶ 10). Plaintiff infers prison officials did not want his appearance captured on video. (*Id*.). Plaintiff completed the 602 and gave it to the sergeant. (*Id*.).

Officer Mendoza was the main officer in charge of the tier during the shift when the assault occurred, along with Officer Espinosa, a female officer who Plaintiff states had a relationship with inmate Price. (*Id*. ¶ 12). Price had assaulted another inmate, a fellow porter,

---

[5] In the list of Defendants, the FAC refers to Officer Doe 2 as the "sergeant [who] met [Plaintiff] in the medical area after [the April 17, 2019] assault and attempted to cover up the assault and the damages." (Doc. No. 14 at 7). Later, the FAC refers to this Officer as "Sgt. John Doe 1." (*Id*. at 9-10). For clarity, the Court refers to this individual as Sgt. Doe 2.

days before this incident and was removed as a porter per prison policy. (*Id.*). Despite the incident and prison policy to the contrary, Officer Espinosa had Price reinstated as a porter before the incident where he attacked Plaintiff. (*Id.*).

Claim 2

On October 3, 2018, upon his arrival at WSP, Plaintiff was sent to the classification desk. (*Id.* ¶ 16). Plaintiff had over $7,000 in suits and other personal effects when he arrived to WSP. (*Id.* ¶ 15). At the classification desk, Sgt. Doe 1[6] looked at the labels on Plaintiff's clothes, including custom-made suits by Giorgio Armani and Hugo Boss and commented, "you're not ever going to need these; do you want to donate them?" (*Id.* ¶ 16). Plaintiff told him that he wanted to ship the property to his son, and Sgt. Doe 1 advised him that if he wanted to ship his property it would be very expensive and if Plaintiff didn't have enough funds in his trust account his property would be forfeited. (*Id.* ¶¶ 17-19). Plaintiff insisted he wanted to mail the property. (*Id.* ¶ 19). Sgt. Doe 1, who was initially "businesslike" became belligerent and gave Plaintiff "a piece of paper" to put his address on. (*Id.* ¶¶ 16, 18, 20). Plaintiff never received a receipt for the property he left with Sgt. Doe 1, and Plaintiff's property was subsequently lost. (*Id.* ¶¶ 18, 24).

Prison officials "denied responsibility by saying that they had mailed the property. Their only proof was a handwritten note by an unknown person that it was sent" and the $49.95 charge on Plaintiff's trust account, which they contend is proof that the property was mailed. (*Id.* ¶ 25). At the third stage of his appeal, Plaintiff was advised to submit a claim to the Department of General Services ("DGS"). (*Id.* ¶ 24). However, at this point the deadline to file a claim with DGS had already passed. (*Id.*). Plaintiff received an initial response from DGS that he needed to resubmit his claim with a signature, which he did. (*Id.*). Plaintiff received no further response from DGS. (*Id.*).

The FAC alleges that Defendant Sgt. Doe 1 "conspired with the person(s) who handled the mail to take my suits . . . and let the officers in Building 4 know that this old man he had assigned to their 'gang building' was a wealthy target." (*Id.* at 16). These building officers

---

[6] This Defendant is referred to in the initial list of Defendants as Sgt. Doe 1 but referred to in the body of the FAC as Sgt. Doe 2. For clarity, the Court refers to him as Sgt. Doe 1.

4

"assisted Sgt. Doe 1 [sic] in his conspiracy to take my property by thwarting the 602-grievance process and retaliated against me." (*Id*. at 16-17).

Plaintiff also alleges that the April 7, 2019 assault described in Claim 1 was the result of retaliatory actions by Defendant Sgt. John Doe 1. (*Id*. at 17). After Plaintiff refused to "donate" his property at the classification desk (*see* Claim 2, below), Sgt. Doe 1 assigned Plaintiff to Building 4 because he "knew the dangers of Building 4 and the notorious actions of the 2-5 gang. He had a 68-year-old, first time, SNY inmate with valuable property [that] Sgt. Doe1 wanted. The danger of sending me to Building 4 was easy to predict." (*Id*. at 17).

Claim 3

Plaintiff states he was being "taxed" by members of the 2-5 Gang who operated in Plaintiff's building. (*Id*. at 13-14 ¶ 26). At some point, they "decided that they wanted more." (*Id*.). On January 11, 2019, as Plaintiff was returning from the shower, he found a crowd of 25 gang members around his cell, including the head of the 2-5 Gang. (*Id*. at 14 ¶ 28). Plaintiff discovered that the group had taken various items of his property, including the monthly commissary bag that he had just purchased the day before. (*Id*. ¶¶ 29-30). Plaintiff reported the issue but was repeatedly ignored by an unnamed correctional officer. (*Id*.). Later, after Plaintiff reported the issue to the next shift, officers were able to locate much of Plaintiff's property. (*Id*. at 31). However, certain items were not recovered. (*Id*.). Plaintiff met with Defendant Sergeant Doe 3 who "looked at [Plaintiff's] profile on his computer. He said that [Plaintiff] was lucky that they only took [his] property and said if [Plaintiff] pursued it, [he] would be beaten." (*Id*.).

Claim 4

In a fourth claim, Plaintiff infers from the facts above that he was the object of a conspiracy amongst "senior officers" and "lead officers" in his building to deprive him of his Fourteenth Amendment equal protection and due process rights. (*Id*. at 16, 18). Plaintiff contends that "Officers at [WSP] conspired to deny certain inmates these protections. I was one of these inmates." (*Id*. at 16). Plaintiff alleges that he was singled out based on his wealth and possibly his age. (*Id*. at 16). He points to various instances where officers failed to follow procedures, such as Defendant Sgt. Doe 1 failing to properly log and record Plaintiff's mailing of

5

his property; Defendants Espinosa and Mendoza reinstating Inmate Price as a porter despite his attack on another inmate; Defendant Hosey opening the door to Plaintiff's cell, allowing Inmate Price to assault Plaintiff; and Defendant Sgt. Doe 2 failing to take a videorecorded statement from Plaintiff after his assault. (*Id*. at 19). The fact that so many senior or lead officers participated in these violations of policy "would lead one to believe that these actions were happening at senior management's direction." (*Id*. at 18). Plaintiff contends that the conspiracy amounted to a denial of his equal protection rights, either as a member of a suspect class, or as a "class of one," and his due process rights.

As relief for all the above claims, Plaintiff seeks monetary damages, "protections such as single cell status," and "medical attention for my vision and pelvis." (*Id*. at 5).

**APPLICABLE LAW AND ANAYSIS**

**A. Section 1915A Screening**

Because Plaintiff commenced this action while he was incarcerated, he is subject to the Prison Litigation Reform Act ("PLRA"), that requires, *inter alia*, that the court screen a complaint that seeks relief against a governmental entity, its officers, or its employees under 28 U.S.C. § 1915A before directing service upon any defendant. This requires the court to identify any cognizable claims and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. §§ 1915A(b)(1), (2); *see also* 28 U.S.C. § 1915(e)(2)(b)(ii) (governing actions proceeding *in forma pauperis*).

A claim is legally frivolous when it lacks an arguable basis either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989); *Franklin v. Murphy*, 745 F.2d 1221, 1227-28 (9th Cir. 1984). Claims are frivolous where they are based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. *Neitzke*, 490 U.S. at 327. A claim fails to state a claim upon which relief may be granted if it appears that the plaintiff can prove no set of facts in support of the claim that would entitle him to relief. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Palmer v. Roosevelt Lake Log Owners Ass'n, Inc.*, 651 F.2d 1289, 1294 (9th Cir. 1981). Examples of immunity that would preclude relief during screening, include, but are not

limited to, quasi-judicial immunity, sovereign immunity, or qualified immunity. Additionally, a prisoner plaintiff may not recover monetary damages absent a showing of physical injury. *See* 42 U.S.C. § 1997e(e). In other words, to recover monetary damages, a plaintiff must allege physical injury that need not be significant but must be more than *de minimis*, except when involving First Amendment claims. *Oliver v. Keller*, 289 F.3d 623, 626-28 (9th Cir. 2002) (surveying other circuit courts for the first time to address injury requirement for monetary damages, and agreeing with the Second, Fifth, and Eleventh Circuits on PLRA's injury requirement).

At the screening stage, the court accepts the factual allegations in the complaint as true, *Hosp. Bldg. Co. v. Rex Hosp. Tr.,* 425 U.S. 738, 740 (1976), construes the complaint in the light most favorable to the plaintiff and resolves all doubts in the plaintiff's favor. *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969); *Bernhardt v. L.A. County*, 339 F.3d 920, 925 (9th Cir. 2003). A court "need not assume the truth of legal conclusions cast in the form of factual allegations." *United States ex rel. Chunie v. Ringrose,* 788 F.2d 638, 643 n. 2 (9th Cir.1986). Nor does the court accept as true conclusory allegations, unreasonable inferences, or unwarranted deductions of fact. *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981). Critical to evaluating a constitutional claim is whether it has an arguable legal and factual basis. *See Jackson v. Arizona*, 885 F.2d 639, 640 (9th Cir. 1989); *Franklin*, 745 F.2d at 1227. The Federal Rules of Civil Procedure require only that the complaint contain "a short and plain statement of the claim showing the pleader is entitled to relief. . .." Fed. R. Civ. P. 8(a)(2). Nonetheless, a claim must be facially plausible to survive screening, which requires sufficient factual detail to allow the court to reasonably infer that each named defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009). The sheer possibility that a defendant acted unlawfully is not sufficient, and mere consistency with liability falls short of satisfying the plausibility standard. *Iqbal*, 556 U.S. at 678; *Moss*, 572 F.3d at 969. Although detailed factual allegations are not required, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *Iqbal*, 556 U.S. at 678 (citations omitted), and courts "are not required to indulge unwarranted inferences," *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir.

2009) (internal quotation marks and citation omitted). Thus, it is inappropriate for the court to assume that the plaintiff "can prove facts that it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters,* 459 U.S. 519, 526, 103 S.Ct. 897, 74 L.Ed.2d 723 (1983).

If an otherwise deficient pleading could be cured by the allegation of other facts, the *pro se* litigant is entitled to an opportunity to amend their complaint before dismissal of the action. *See Lopez v. Smith*, 203 F.3d 1122, 1127-29 (9th Cir. 2000) (en banc); *Lucas v. Department of Corr.*, 66 F.3d 245, 248 (9th Cir. 1995). However, it is not the role of the Court to advise a *pro se* litigant on how to cure the defects. Such advice "would undermine district judges' role as impartial decisionmakers." *Pliler v. Ford*, 542 U.S. 225, 231 (2004); *see also Lopez*, 203 F.3d at 1131 n.13.

### B. Related Claims and Joinder

The Rules permit a complaint to include all *related claims* against a party and permit joinder of all defendants alleged to be liable for the "same transaction, occurrence, or series of transactions or occurrences" where "any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 18(a) and 20(a)(2) (emphasis added). But the Rules do not permit conglomeration of unrelated claims against unrelated defendants in a single lawsuit. Unrelated claims must be filed in separate lawsuits.

> The controlling principle appears in Fed. R. Civ. P. 18(a): 'A party asserting a claim to relief as an original claim, counterclaim, cross-claim, or third-party claim, may join, either as independent or as alternate claims, as many claims, legal, equitable, or maritime, as the party has against an opposing party.' Thus multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2. Unrelated claims against different defendants belong in different suits, not only to prevent the sort of morass [a multiple claim, multiple defendant] suit produce[s], but also to ensure that prisoners pay the required filing fees-for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees. 28 U.S.C. § 1915(g).

*K'napp v. California Dept. of Corrections*, 2013 WL 5817765, at *2 (E.D. Cal., Oct. 29,

8

2013), *aff'd sub nom. K'napp v. California Dept. of Corrections & Rehabilitation*, 599 Fed. Appx. 791 (9th Cir. 2015) (alteration in original) (quoting *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007).

Plaintiff asserts claims based on a disparate set of events: a failure to protect claim stemming from an April 2019 assault by another inmate (Claim 1); mishandling of his property by the classification desk sergeant when Plaintiff was first admitted to WSP in October 2018 (Claim 2); and failure of correctional staff to secure the return of his property in January 2019 after being stolen by prison gang members (Claim 3). (*See generally* Doc. No. 14). The Court previously advised Plaintiff the mere fact that all of the claims arise from events that took place at WSP is insufficient to establish relatedness for purposes of joinder. (Doc. No. 13 at 8-9).

Plaintiff contends that the claims are all related because they "have a common basis, the Fourteenth Amendment. They all flow from Sgt. Doe1's desire to take my property." (*Id*. at 20). Plaintiff's theory that all the events described were the result of his initial interaction with Sgt. Doe 1 at the classification desk is not supported by facts. The mere fact that Defendant Sgt. Doe 1 assigned Plaintiff to Building 4 in October 2018 is insufficient to establish a connection between that decision and the assault, six months later, committed by an inmate in Building 4. The FAC contains no facts alleging any coordination between Sgt. Doe 1 and the officers who allegedly enabled Price's assault on Plaintiff. Plaintiff's speculation to that effect is insufficient to state a claim.

Nor does Plaintiff provide any factual support for a connection between the mishandling of his property by unnamed correctional staff in Claim 2 and the theft of his commissary bag by gang members in Claim 3, which occurred three months later. The conclusory assertion that "building officers assisted Sgt. Doe1 in his conspiracy to take my property . . . and retaliated against me[,]" *(id*. at 16-17) is insufficient to state a claim. *Western Mining Council*, 643 F.2d at 624 (a court does not need to accept as true conclusory allegations, unreasonable inferences, or unwarranted deductions of fact). The FAC alleges no facts establishing a plausible connection between Sgt. Doe 1 and the theft of Plaintiff's property by gang members. While Plaintiff alleges that Sgt. Doe 1 chose to house him in Building 4 to place Plaintiff in harm's way, the significant

gap in time between his housing assignment and the theft by gang members, and the absence of any facts alleging coordination between Sgt. Doe 1 and the gang members or Building 4 officers makes the inference of a connection unreasonable. Moreover, for the reasons set forth below, Plaintiff's property claims are not cognizable and cannot proceed in this action.

Plaintiff's assertion that these claims are linked under a conspiracy to deprive him of his Fourteenth Amendment rights is similarly unavailing. As set forth more fully below, Plaintiff fails to successfully plead the existence of such a conspiracy, and therefore the Court finds the disparate incidents alleged do not share a common set of facts that would warrant their joinder in a single action. Further, "[t]he fact that claims are premised on the same type of constitutional violation(s) . . . against multiple defendants" as Plaintiff attempts to allege here, "does not make them factually related." *Mosier v. Cal. Dep't of Corr. & Rehab.*, 2012 WL 2577524, at *2 (E.D. Cal. Jul. 2, 2012)

### C. Conspiracy

To establish a conspiracy to violate one's rights under §1983, a plaintiff must plead facts supporting "(1) the existence of an express or implied agreement among the defendant officers to deprive him of his constitutional rights, and (2) an actual deprivation of those rights resulting from that agreement." *See Avalos v. Bacca*, 596 F.3d 583, 592 (9th Cir. 2010); *Franklin v. Fox*, 312 F.3d 423, 441 (9th Cir. 2002).

Plaintiff's FAC alleges a series of incidents, spanning from October 2018 to October 2019, in which various named and unidentified WSP staff harmed him, by stealing his property at intake; thwarting his efforts to seek relief for the stolen property; failing to protect him from an inmate's assault; failing to adequately document plaintiff's injuries; and failing to adequately follow up on Plaintiff's reports of inmate stealing property from his cell. (*See generally* Doc. No. 14). These claims involve seven identified Defendants, and others not named in the FAC. Plaintiff infers from these various actions a single conspiracy, which resulted from Plaintiff's refusal to accept Defendant Sgt. Doe 1's invitation that he "donate" his expensive designer suits rather than mailing them to his son. (*Id*. at 17).

As Plaintiff correctly notes, "to prevail on a conspiracy claim, [a] plaintiff must show

specific facts to support the existence of the claimed conspiracy" including "the existence of an express or implied agreement among the defendants to deprive" plaintiff of his constitutional rights. *Burns v. County of King*, 883 F.2d 819, 821 (9th Cir.1989) Conclusory allegations of conspiracy are not enough to support a § 1983 conspiracy claim. *Ziegler v. Corr. Indus.*, 2021 WL 2211263, at *3 (W.D. Wash. May 12, 2021), report and recommendation adopted in part, No. 20-5288 RJB - TLF, 2021 WL 2212717 (W.D. Wash. June 1, 2021).  Although an "agreement or meeting of minds to violate [the plaintiff's] constitutional rights must be shown," *Woodrum v. Woodward County*, 866 F.2d 1121, 1126 (9th Cir. 1989), "[d]irect evidence of improper motive or an agreement to violate a plaintiff's constitutional rights will only rarely be available.  Instead, it will almost always be necessary to infer such agreements from circumstantial evidence or the existence of joint action." *Mendocino Environmental Center v. Mendocino County*, 192 F.3d 1283, 1302 (9th Cir.1999).  Thus, "an agreement need not be overt, and may be inferred on the basis of circumstantial evidence such as the actions of the defendants." *Id*. at 1301.

Here, beyond Plaintiff's speculation, there are no facts supporting Plaintiff's theory that the incidents were the result of an "express or implied agreement" among the participants.  While the existence of a conspiracy can be inferred from circumstantial evidence, there is nothing beyond Plaintiff's suspicions to support his claim.  The FAC is devoid of any fact establishing that the incidents described were anything but separate incidents, involving different individuals acting independently.

### Fourteenth Amendment Claim

Further, Plaintiff fails to allege facts establishing a violation of his Fourteenth Amendment Equal Protection or Due Process rights.  "No State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.  "The Equal Protection Clause requires the State to treat all similarly situated people equally." *Hartmann v. Cal. Dep't of Corr. & Rehab*., 707 F.3d 1114, 1123 (9th Cir. 2013).  There are two different ways in which a plaintiff may state an equal protection claim.  A plaintiff's first option is to allege "facts plausibly showing that the defendants acted with an intent or purpose to discriminate against [him] based upon membership in a protected class[.]" Id. (quoting Thornton v. City of St.

Helens, 425 F.3d 1158, 1166 (9th Cir. 2005)). The second way a plaintiff may state a claim is "as a 'class of one' by alleging that [the] plaintiff has 'been intentionally treated differently from others similarly situated and that there is no rational basis for the treatment[.]" *Koboyashi v. McMulling*, 2022 WL 3137958, at *23 (C.D. Cal. May 31, 2022) (quoting *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)). Here, Plaintiff contends that he was treated differently than other inmates based on his wealth and his age. However, "age is not a suspect classification under the Equal Protection Clause." *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 63 (2000). As a general rule, wealth is also not a suspect classification for equal protection purposes. *See e.g. Harris v. McRae*, 448 U.S. 297, 323 (1980) ("[T]his Court has held repeatedly that poverty, standing alone, is not a suspect classification."); *Ortwein v. Schwab*, 410 U.S. 656, 660-61 (1973) (concluding that an appellate court filing fee in a civil action did not violate equal protection because wealth is not a suspect class and the fee was rationally related to the state's interest in offsetting court operating costs). Thus, Plaintiff is unable to state an equal protection claim based his membership in a class based on his age or wealth.

Nor does Plaintiff state an equal protection claim based on a "class of one" theory. Although the Supreme Court has acknowledged the class-of-one theory of equal protection, it has held that the theory applies only in certain limited circumstances; it does not apply when the state actions "by their nature involve discretionary decisionmaking based on a vast array of subjective, individualized assessments." *Engquist v. Oregon Dep't of Agr.*, 553 U.S. 591, 603 (2008) (holding that the class-of-one theory does not apply in the public employment context); *see also Towery v. Brewer*, 672 F.3d 650, 660–61 (9th Cir. 2012). "[A]llowing a challenge based on the arbitrary singling out of a particular person would undermine the very discretion that such officials are entrusted to exercise." *Engquist*, 553 U.S. at 604 (recognizing that a traffic officer does not violate the Equal Protection Clause merely because the officer gives tickets to only some speeding drivers). The Supreme Court has recognized that the problem with allowing class-of-one claims to go forward in a context where government officials are necessarily making subjective, individualized decisions is that the government will be forced to defend a multitude of such claims and courts will be obliged to go through them in search of the rare needle in a

1 haystack. *Id*. at 608-09.

2 Thus, a person cannot state an equal protection claim merely by dividing all persons not
3 injured into one class and alleging that they received better treatment than the plaintiff did. *See*
4 *Thornton v. City of St. Helens*, 425 F.3d 1158, 1167 (9th Cir. 2005). The Fourteenth
5 Amendment's Equal Protection Clause does not require that states treat all persons within their
6 borders identically. *See McGowan v. Maryland*, 366 U.S. 420, 425 (1961) (holding that "the
7 Fourteenth Amendment permits the States a wide scope of discretion in enacting laws which
8 affect some groups of citizens differently than others" so long as the classification does not rest
9 on grounds "wholly irrelevant to the achievement of the State's objective").

10 Furthermore, to state a "class-of-one" equal protection claim, a plaintiff must identify the
11 group of individuals with whom he is similarly situated, identify the allegedly intentional and
12 disparate treatment, and allege that there was no rational basis for the different treatment.
13 *Gerhart v. Lake Cty., Mont*., 637 F.3d 1013, 1022 (9th Cir. 2011); *Chappell v. Bess*, WL
14 3276984, at *19–21 (E.D. Cal. Aug. 9, 2012). "Similarly situated" persons are those "who are in
15 all relevant respects alike." *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992). Plaintiff alleges that
16 "[o]fficers at Wasco conspired to deny certain inmates [equal protection and due process]. *I was*
17 *one of these inmates*." (Doc. No. 14 at 16) (emphasis added). Plaintiff cannot maintain that he
18 has been singled out for disparate treatment if he is one of several individuals who are being
19 subjected to the treatment. Thus, Plaintiff's equal protection claim based on a "class of one" fails.

20 As to Plaintiff's Fourteenth Amendment due process claim, liberally construed, the FAC
21 alleges that the failure to follow prison procedures in ways that harmed Plaintiff violated his due
22 process rights. However, there is no federal constitutional liberty interest in compliance with
23 state prison regulations or policies. *Solomon v. Felker*, 2013 WL 5375538, at *12 (E.D. Cal.
24 Sept. 24, 2013) ("Plaintiff's allegation that the defendants failed to adhere to the prison's own
25 institutional policies and procedures does not, by itself" give rise to a constitutional violation);
26 *Sandin v. Conner*, 515 U.S. 472, 481–82, (1995) (recognizing prison regulations are "primarily
27 designed to guide correctional officials in the administration of a prison" and are "not designed to
28 confer rights on inmates"); *Hovater v. Robinson*, 1 F.3d 1063, 1068 n. 4 (10th Cir. 1993) ("[A]

13

failure to adhere to administrative regulations does not equate to a constitutional violation."); *see also Armstrong v. Warden of USP Atwater*, 2011 WL 2553266, at *8 (E.D. Cal. June 24, 2011) (citing same). Accordingly, Plaintiff cannot state a federal constitutional claim, or a claim for conspiracy, based on prison officials' alleged violation of a California state prison regulation.

### D. Fifth Amendment Deprivation of Property and Due Process Claim

Liberally construed, Plaintiff alleges a Fifth Amendment unlawful taking of property without just compensation claim based on allegations that Defendant Sgt. Doe 1 stole or mishandled his property. As Plaintiff was previously advised, such an action is barred because California provides state prisoners adequate post-deprivation remedies through the Government Claims Act to satisfy the due process clause. *See Hudson v. Palmer*, 468 U.S. 517, 533 (1984) (finding that "a negligent or intentional deprivation of a prisoner's property fails to state a claim under section 1983 if the state has an adequate post deprivation remedy."); *Barnett v. Centoni*, 31 F.3d 813, 816 (9th Cir. 1994) (holding that California has an adequate post-deprivation remedy through the Government Claims Act process.).

Plaintiff contends that he was not informed until the third stage appeal of his property claim that he needed to file a claim with the Department of General Services. By that point, the time for filing a claim had run. Liberally construed, Plaintiff alleges a due process violation based on the failure to properly inform him of the GCA process. However, inmates lack a constitutional right to a grievance procedure and there are no constitutional requirements regarding how a grievance system is operated, even if plaintiff believes the process to be unfair or not accurate. *See Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003); *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988).

The fact that Plaintiff asserts he was not advised at the beginning of his grievance process that he would need to pursue a remedy for his property claim through the Government Claims Act process does not state a standalone constitutional claim, because there is no constitutional right to a particular grievance process. *See Mann*, 855 F.2d at 640; *see also Ramirez*, 334 F.3d at 860. And because California has an adequate post-deprivation remedy, even though Plaintiff did not avail himself of it, the FAC fails to state a Fifth Amendment claim.

### E. Failure to Protect

"[P]rison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners." *Cortes–Quinones v. Jimenez–Nettleship,* 842 F.2d 556, 558 (internal quotation marks and citation omitted), cert. denied, 488 U.S. 823 (1988); *see also Wilson v. Seiter,* 501 U.S. 294, 303 (describing "the protection [an inmate] is afforded against other inmates" as a "conditio[n] of confinement" subject to the strictures of the Eighth Amendment). "It is not, however, every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). A prison official violates the Eighth Amendment only when two requirements are met. First, the deprivation alleged must be, objectively, "sufficiently serious," *Wilson,* 501 U.S., at 298. Second, a prison official must have a "sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834. In prison-conditions cases that state of mind is one of "deliberate indifference" to inmate health or safety, *Wilson,* 501 U.S. at 302–303; see also *Helling v. McKinney,* 509 U.S. 25, 34–35; *Hudson v. McMillian*, 503 U.S. 1, 5 (1992); *Estelle v. Gamble,* 429 U.S. 97, 106 (1976).

Liberally construed, Plaintiff asserts that Defendants Hosey, Espinosa, and Mendoza failed to protect him from the assault by inmate Price. Plaintiff appears to advance two theories of Defendants' responsibility for the assault on April 7, 2019. First, Defendants Espinosa and Mendoza reinstated inmate Price as a porter, contrary to prison regulations, after he assaulted another inmate just days earlier. Second, Defendants Hosey and Mendoza allowed inmate Price to enter Plaintiff's cell on April 7, 2019 despite knowing of his violent history and his violent intentions on that particular day.

      1. <u>Defendant Espinosa</u>

Plaintiff states a cognizable Eighth Amendment failure to protect claim as to Defendant Espinosa. Espinosa served as one of the officers supervising the tier where Plaintiff was assaulted. Under an Eighth Amendment failure to protect claim, "[w]hether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence . . . and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was

1  obvious." *Farmer,* 511 U.S. at 842 (citations omitted).  Here, Defendant Espinosa knew that
2  inmate Price had recently assaulted another inmate and knew that prison regulations prohibited
3  Price from serving as a porter, but nevertheless reinstated him as a porter.  (Doc. No. 14 at 10
4  ¶ 12).  In other words, she knew that Price posed a heightened risk to the safety of all the inmates
5  in Plaintiff's building.  Nevertheless, she disregarded prison regulations designed to protect
6  prisoners from violent inmates like Price and reinstated him as a porter, giving him ready access
7  to other inmates' cells, including Plaintiff's.  Her actions reflect a deliberate indifference to the
8  safety of Plaintiff and other inmates in violation of the Eighth Amendment, which led to
9  Plaintiff's serious injuries on April 7, 2019.

### 2. Defendant Mendoza

As the supervising officer on Plaintiff's tier, Defendant Mendoza was aware of the immediate threat that inmate Price posed to Plaintiff on April 7, 2019.  Price was yelling aggressively at Plaintiff, loud enough for Officer Mendoza to hear.  (*Id*. at 8-9).  The fact that Price was loudly yelling "I'll come in there, whip your ass and take all your commissary" (*id*. at 9), alerted Defendant Mendoza to the likelihood that Plaintiff would be assaulted if Price was allowed into his cell.  Mendoza also knew that Price had recently beaten another inmate.  According to Plaintiff, Officer Hosey looked to Officer Mendoza for guidance as to whether he should let Price into Plaintiff's cell; after looking into Officer Mendoza's office, Officer Hosey nodded, returned to his station, and then opened Plaintiff's door.  (*Id*.).  Together, these facts establish that Mendoza approved Officer Hosey's decision to open Plaintiff's cell, and he had a "sufficiently culpable mind" because he knew that injury to Plaintiff was likely to follow.  As a result of Mendoza's deliberate indifference, Plaintiff was badly beaten, and suffered long-lasting injuries.  Plaintiff therefore states a cognizable Eighth Amendment failure to protect claim against Defendant Mendoza.

### 3. Officer Hosey

It is unclear whether Officer Hosey was aware of inmate Price's recent assault on another inmate.  However, on April 7, 2019 he was serving as the tower guard and was thus in a position to see and hear the threat that inmate Price posed to Plaintiff.  He would have heard Price

shouting threats at Plaintiff and should have known that Price would likely use violence if admitted into Plaintiff's cell. Despite Plaintiff's pleas not to let Price in, Defendant Hosey twice opened Plaintiff's cell door, ultimately letting Price in where he assaulted Plaintiff. Thus, liberally construed, Plaintiff states a cognizable Eighth Amendment failure to protect claim against Officer Hosey.

### F. Verbal Harassment by Prison Staff

Liberally construing Plaintiff's complaint, he also alleges a violation of the Eighth Amendment when an unnamed sergeant told Plaintiff that in light of his criminal record he was "lucky" that he only had his property stolen, and that if he pursued a claim he would "probably be beaten." (*Id*. at 15 ¶ 33).

"[V]erbal harassment generally does not violate the Eighth Amendment." *Keenan v. Hall*, 83 F.3d 1083, 1092 (9th Cir. 1996) (implying that harassment "calculated to . . . cause [the prisoner] psychological damage" might state an Eighth Amendment claim) (citing *Oltarzewski v. Ruggiero*, 830 F.2d 136, 139 (9th Cir. 1987)), *amended by* 135 F.3d 1318 (9th Cir. 1998). Plaintiff fails to state a claim under the Eighth Amendment because Plaintiff does not allege any facts indicating psychological damage was caused by prison officials' comments, nor does he allege the comments were calculated to do so. *See Keenan*, 83 F.3d at 1092.

### CONCLUSION

For the reasons set forth above, the undersigned finds that Plaintiff's FAC states cognizable failure to protect claims against Defendants Espinosa, Mendoza, and Hosey, but no other claims. The undersigned finds further leave to amend this claim is not warranted because Plaintiff failed to cure the deficiencies in his original Complaint despite being advised of the governing case law above. *Ferdik v. Bonzelet*, 963 F.2d 1258, 1261 (9th Cir. 1992) (noting discretion to deny leave to amend is particularly broad where court has afforded plaintiff one or more opportunities to amend his complaint); *see also Saul v. United States*, 928 F.2d 829, 843 (9th Cir. 1991) (A district court can deny leave "where the amendment would be futile . . . or where the amended complaint would be subject to dismissal"). The undersigned will therefore recommend Plaintiff be permitted to proceed on those claims and all remaining claims and

Defendants be dismissed.

Accordingly, it is hereby **ORDERED**:

The Clerk of Court is directed to assign this case to a district judge.

It is further **RECOMMENDED**:

Plaintiff be permitted to proceed on his Eighth Amendment failure to protect claims against Defendants Mendoza, Espinosa, and Hosey, and all other claims and Defendants be dismissed.

NOTICE TO PARTIES

These findings and recommendations will be submitted to the United States district judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within fourteen (14) days after being served with these findings and recommendations, a party may file written objections with the court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

Dated:   October 30, 2023

HELENA M. BARCH-KUCHTA
UNITED STATES MAGISTRATE JUDGE