1
2
3
4
5
6
7
8                      UNITED STATES DISTRICT COURT

9                 FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   GARY LEE BEAVERS,                    Case No.  1:21-cv-00650-HBK (PC)

12              Plaintiff,                ORDER GRANTING DEFENDANTS'
                                          EXHAUSTION BASED MOTION FOR
13        v.                              SUMMARY JUDGMENT AS TO
                                          DEFENDANTS MENDOZA AND
14   HOSEY, MENDOZA, and ESPINOZA,        ESPINOZA[1]

15              Defendants.               (Doc. No. 38)

16

17

18        Pending before the Court is Defendants' exhaustion-based Motion for Summary Judgment

19   brought on behalf of Defendants Mendoza, and Espinoza on October 25, 2024.  (Doc. No. 38,

20   "MSJ").  Plaintiff filed an Opposition, (Doc. No. 41), and Defendants filed a Reply.  (Doc. No.

21   44).  Finding no genuine dispute of material fact that Plaintiff did not exhaust his Eighth

22   Amendment failure to protect claims against Defendants Mendoza and Espinoza, the Court grants

23   Defendants' MSJ.  This case remains pending against only Defendant Hosey.

24                          I.      BACKGROUND

25   **A.  Summary of Plaintiff's Operative Complaint**

26        Plaintiff Gary Lee Beavers ("Plaintiff" or "Beavers"), a state prisoner, proceeds on his

27   _____

28   [1] Both parties have consented to the jurisdiction of a magistrate judge under 28 U.S.C. § 636(c)(1).  (Doc.
     No. 36).

First Amended Complaint ("FAC"), as screened, alleging an Eighth Amendment claim for failure to protect against Defendants Hosey, Mendoza, and Espinoza.  (Doc. Nos. 14, 16, 18).  In relevant part, the FAC alleges the following facts.  On April 7, 2019, while Plaintiff was incarcerated at Wasco State Prison ("WSP"), Plaintiff told a fellow inmate named Price that he wanted to be repaid for some coffee that inmate Price had "borrowed" from him.  (Doc. No. 14 at 8 ¶ 3).  Inmate Price, who was a porter in Building 4, refused to do so.  (*Id*.).  When Plaintiff insisted, inmate Price screamed at Plaintiff loud enough so that "everyone in the building could hear."  (*Id*. ¶ 5).  Inmate Price threatened Plaintiff, telling him if he didn't watch out, he (inmate Price) would "come in there, whip your ass and take all of your commissary."  (*Id*. at 8-9 ¶ 5).

Inmate Price then turned to Defendant Hosey, the tower officer controlling the cell doors, and yelled "open this goddamn door."  (*Id*. ¶ 6).  Plaintiff yelled to Defendant Hosey, "don't open this door."  (*Id*.).  Plaintiff saw Hosey walk to the window overlooking Defendant Mendoza's office and nod.  (*Id*.).  Price was yelling aggressively at Plaintiff, loud enough for Officer Mendoza to hear. (Id. at 8-9).  Then Hosey walked back to his station.  (*Id*.).  Plaintiff again shouted to Hosey "don't open this door," but Hosey electronically opened the door.  (*Id*.).  Before inmate Price could notice, Plaintiff closed the door.  (*Id*.).  After inmate Price yelled to him, Hosey opened the door again.  (*Id*.).  This time, Price "rushed into [Plaintiff's] cell, pummeling [him] with both fists."  (*Id*. ¶ 7).  As a result of the assault, Plaintiff fell backwards onto his metal bunk, hitting his pelvis and falling to the floor.  (*Id*.).  Officer Mendoza was the main officer in charge of the tier during the shift when the assault occurred, along with Officer Espinosa, a female officer who Plaintiff states had a relationship with inmate Price. (Id. ¶ 12). Price had assaulted another inmate, a fellow porter, days before this incident and was removed as a porter per prison policy. (Id.). Despite the incident and prison policy to the contrary, Officer Espinosa had Price reinstated as a porter before the incident where he attacked Plaintiff.  (*Id*.).  As relief, Plaintiff seeks monetary damages, "protections such as single-cell status," and medical attention for his injuries.  (Doc. No. 14 at 5).

**B. Defendant's Exhaustion-Based Motion for Summary Judgment**

Defendants filed the instant exhaustion-based Motion for Partial Summary Judgment on

2

October 25, 2024.  (Doc. No. 38).  In support, Defendants submit a memorandum of points and authorities (Doc. No. 38-1); a Statement of Undisputed Facts (Doc. No. 38-2); the declaration of Howard Moseley (Doc. No. 38-3); the declaration of F. Marquez (Doc. No. 38-4); and a *Rand* warning to Plaintiff (Doc. No. 38-5).

Defendants contend the uncontroverted evidence proves Plaintiff did not properly and fully exhaust his available administrative remedies regarding his Eighth Amendment failure to protect claims against Defendants Mendoza and Espinoza.  (*See generally* Doc. No. 38-1).  Specifically, they argue that while Plaintiff's grievance regarding the April 7, 2019 incident (Grievance 1089) properly alleged a failure to protect claim against Defendant Hosey, it did not identify either Defendants Mendoza or Espinoza, nor describe any of their actions or inactions sufficient to put prison officials on notice of any claims against them.  (*Id*. at 7-9).  Moreover, while Plaintiff mentioned Defendants Mendoza and Espinoza in his third-level appeal, the Office of Appeals refused to consider the new information and advised Plaintiff in its September 24, 2019 Third-Level Appeal Decision that, "[t]he appellant has added new issues and requests to the appeal.  The additional requested action is not addressed herein as it is not appropriate to expand the appeal beyond the initial problem and the initially requested action (CDC Form 602, Inmate/Parolee Appeal Form, Sections A and B)."  (Doc. No. 38-3 at 18).  Thus, Defendants argue that Plaintiff was on notice that any claims against Defendants Mendoza and Espinoza had not been fully exhausted and would have to be addressed in a refiled or separate grievance.  (Doc. No. 38-1 at 10).

### C.  Plaintiff's Opposition to Exhaustion-Based MSJ

On December 23, 2024, Plaintiff filed an Opposition to Defendants' MSJ.  (Doc. No. 41).  In support, Plaintiff submits a "Rebuttal to Defendants' Motion for Summary Judgment" (*id*. at 1-11) along with copies of Plaintiff's grievance and the administrative responses (*id*. at 12-20).  As an initial matter, Plaintiff's Opposition does not comply with Local Rule 260(b), which requires the non-moving party to reproduce the moving party's itemized statement of facts and specifically admit or deny each fact, "including with each denial a citation to the particular portions of any pleading, affidavit, deposition, interrogatory answer, admission, or other document relied upon in

1    support of that denial." L.R. 260(b) (E.D. Cal. 2023). Plaintiff's Opposition does not include a

2    response to Defendants' Separate Statement of Undisputed Facts. Plaintiff also does not submit

3    an optional Statement of Disputed Facts, as permitted by Rule 260(b).

4         Plaintiff contends that Grievance 1089 and the additional facts he included in his appeal

5    put CDCR on notice as to his Eighth Amendment failure to protect claims against all three

6    Defendants, and that CDCR regulations do not prohibit adding the names of additional defendants

7    later in the grievance process. (*See generally* Doc. No. 41 at 1-11). Moreover, he contends that

8    CDCR officials did not provide an inmate manual explaining the grievance process and forced

9    him to submit a grievance immediately after being assaulted. (*Id*. at 4, 7-11). In effect, Plaintiff

10   argues the grievance system was unavailable to him and thus the Court should deem his grievance

11   exhausted as to all three Defendants. (*Id.* at 10-11). Finally, Plaintiff claims that "name all

12   defendant" requirement was repealed on June 1, 2020 and regulations "contemplate" that

13   involved staff members may be identified later in the appeal process. (*Id*. at 5-7).

14        D. **Defendants' Reply**

15        In their Reply, Defendants argue that the uncontroverted evidence demonstrates that

16   Plaintiff submitted one grievance related to the claims raised in this action and the grievance

17   complained only about actions that could be attributed to Hosey. (Doc. No. 44 at 2). Contrary to

18   Plaintiff's understanding, he was not permitted to add new names to his upper-level grievance and

19   the requirement to "name all defendants" was not repealed. (*Id*.). Thus, Plaintiff's attempt to

20   include new allegations against Defendants Mendoza and Espinoza in his third-level review of his

21   appeal, was properly rejected consistent with CDCR regulations that prohibit an inmate from

22   raising a new issue, information or persons that was not included in their original grievance.

23                        **II.    APPLICABLE LAW**

24        **A.  Summary Judgment Standard**

25        Summary judgment is appropriate when there is "no genuine dispute as to any material

26   fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is

27   material where it is (1) relevant to an element of a claim or a defense under the substantive law

28   and (2) would affect the outcome of the suit. *See Anderson v. Liberty Lobby, Inc.* 477 U.S. 242,

                                    4

247 (1987).

The party moving for summary judgment bears the initial burden of proving the absence of a genuine dispute of material fact.  *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).  When the moving party has met this burden, the nonmoving party must go beyond the pleadings and set forth specific facts by affidavits, deposition testimony, documents, or discovery responses, showing there is a genuine issue that must be resolved by trial.  *See* Fed. R. Civ. P. 56(c)(1); *Pacific Gulf Shipping Co. v. Vigorous Shipping & Trading S.A.*, 992 F.3d 893, 897 (9th Cir. 2021).  A mere "scintilla of evidence" in support of the nonmoving party's position is insufficient.  *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010).  Rather, the evidence must allow a reasonable juror, drawing all inferences in favor of the nonmoving party, to return a verdict in that party's favor.  *Id.*

In an exhaustion-based summary judgment motion, the defendant bears the initial burden of establishing "that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy."  *Albino v. Baca*, 747 F.3d 1162, 1172 (9th Cir. 2014).  If the defendant carries that burden, "the burden shifts to the prisoner to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him."  *Id.*  The ultimate burden of persuasion remains, however, with defendant.  *Id.*

The Court has carefully reviewed and considered all arguments, points and authorities, declarations, exhibits, statements of undisputed facts and responses thereto, if any, objections, and other papers filed by the parties.  The omission to an argument, document, paper, or objection is not to be construed that the Court did not consider the argument, document, paper, or objection. Instead, the Court thoroughly reviewed and considered the evidence it deemed admissible, material, and appropriate for purposes of this Order.

**B.  Exhaustion Under the PLRA**

Under the PLRA, "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C.

§ 1997e(a). The exhaustion requirement "applies to all inmate suits about prison life," including *Bivens* claims. *Porter v. Nussle*, 534 U.S. 516, 524, 532 (2002). Exhaustion is a condition precedent to filing a civil rights claim. *Woodford v. Ngo*, 548 U.S. 81, 93 (2006).

The PLRA recognizes no exception to the exhaustion requirement, and the court may not recognize a new exception, even in "special circumstances." *Ross v. Blake*, 578 U.S. 632, 648 (2016). The one significant qualifier is that "the remedies must indeed be 'available' to the prisoner." *Id.* at 639. A prison's internal grievance process controls whether the grievance satisfies the PLRA exhaustion requirement. *Jones v. Bock*, 549 U.S. 199, 218 (2007).

However, the Ninth Circuit has held that "a prisoner exhausts such administrative remedies as are available . . . under the PLRA despite failing to comply with a procedural rule if prison officials ignore the procedural problem and render a decision on the merits of the grievance at each available step of the administrative process." *Reyes v. Smith*, 810 F.3d 654, 658 (9th Cir. 2016); *see also Franklin v. Foulk*, 2017 WL 784894, at *4–5 (E.D. Cal. Mar. 1, 2017); *Franklin v. Lewis*, 2016 WL 4761081, at *6 (N.D. Cal. Sept. 13, 2016). Thus, a prisoner's failure to list all staff members involved in an incident in his inmate grievance, or to fully describe the involvement of staff members in the incident, will not necessarily preclude his exhaustion of administrative remedies. *Reyes*, 810 F.3d at 958; *Foulk*, 2017 WL 784894, at *4 ("[T]he court in *Reyes* found that even though the plaintiff's grievance failed to name two physicians on the prison's three-person pain committee, prison officials were put on notice of the nature of the wrong alleged in the suit—that the plaintiff was wrongfully denied pain medication." ); *Lewis*, 2016 WL 4761081, at *6 ("[T]o the extent Defendants argue that Plaintiff failed to comply with a procedural requirement by not naming Defendants in [his appeal], this deficiency is not necessarily fatal to Plaintiff's claim pursuant to *Reyes*"); *Grigsby v. Munguia*, 2016 WL 900197, at *11–12 (E.D. Cal. Mar. 9, 2016) (appeal pursued through all three levels of review challenged the excessive force incident, and prison officials aware of defendant Baker's involvement); *see also Bulkin v. Ochoa*, 2016 WL 1267265, at *1–2 (E.D. Cal. Mar. 31, 2016) (declined to dismiss reckless endangerment claims based on failure to name two defendants in appeal because prison officials addressed the claim on the merits, were alerted to the problem, knew the actors involved,

and were given an opportunity to rectify the alleged wrong); *see also McClure v. Chen*, 246 F.Supp.3d 1286, 1292–94 (E.D. Cal. Mar. 28, 2017) (claim that prison officials failed to provide adequate medical attention for an eye injury suffered after falling from his bunk, the same as raised in his federal complaint and pursued until the appeals were granted, was sufficient to exhaust remedies).

Nonetheless, for administrative remedies to be exhausted by California prisoners as to defendants who were not identified in the inmate grievance, there must be a "sufficient connection" between the claim in the appeal and the unidentified defendants such that prison officials can be said to have had "notice of the alleged deprivation" and an "opportunity to resolve it." *Reyes*, 810 F.3d at 959 (finding that plaintiff had satisfied PLRA exhaustion requirements as to two prison doctors despite not having identified them in his inmate appeals because there was a sufficient connection between plaintiff's appeal based on inadequate pain management, and the doctors, who served on the prison committee that had denied plaintiff medication); *McClure*, 246 F.Supp.3d at 1293–94 (remedies exhausted even though doctors not named in appeal; prison was placed on notice).

An inmate must exhaust available remedies but is not required to exhaust unavailable remedies. *Albino v. Baca*, 747 F.3d 1162, 1171 (9th Cir. 2014) (en banc). "To be available, a remedy must be available 'as a practical matter'; it must be 'capable of use; at hand.'" *Id.* (quoting *Brown v. Valoff*, 422 F.3d 926, 936–37 (9th Cir. 2005)). "Accordingly, an inmate is required to exhaust those, but only those, grievance procedures that are 'capable of use' to obtain 'some relief for the action complained of.'" *Ross*, 578 U.S. at 642 (quoting *Booth v. Churner*, 532 U.S. 731, 738 (2001)).

Failure to exhaust under the PLRA is "an affirmative defense the defendant must plead and prove." *Jones*, 549 U.S. at 204. It is the defendant's burden to prove that there was an available administrative remedy, and that the prisoner failed to exhaust that remedy. *Albino*, 747 F.3d at 1172. "Once the defendant has carried that burden, the prisoner has the burden of production. That is, the burden shifts to the prisoner to come forward with evidence showing that there is something in his case that made the existing and generally available administrative

7

remedies effectively unavailable to him." *Id.* If the court concludes that the prisoner failed to exhaust available administrative remedies, the proper remedy is dismissal without prejudice. *See Jones*, 549 U.S. at 223–24; *Lira v. Herrera*, 427 F.3d 1164, 1175–76 (9th Cir. 2005).

### C.  CDCR Grievance Procedures

The California Department of Corrections and Rehabilitation's ("CDCR") administrative remedy process governs this action.[2] *See* Cal. Code Regs. tit. 15, § 3084.1 (2016). To exhaust available remedies, an inmate must proceed through three formal levels of review unless otherwise excused under the regulations. *Id.* § 3084.5. A prisoner initiates the exhaustion process by submitting a CDCR Form 602 "Inmate/Parolee Appeal" ("grievance"). *Id.* §§ 3084.2(a), 3084.8(b) (quotation marks omitted). The grievance must "describe the specific issue under appeal and the relief requested," and the inmate "shall list all staff member(s) involved and shall describe their involvement in the issue." *Id.* § 3084.2(a). The inmate "shall state all facts known and available to him/her regarding the issue being appealed at the time of submitting the Inmate/Parolee Appeal Form, and if needed, the Inmate Parolee/Appeal Form Attachment." *Id.* § 3084.2(a)(4). "Administrative remedies shall not be considered exhausted relative to any new issue, information, or person later named by the appellant that was not included in the originally submitted CDCR Form 602." *Id.* § 3084.1(b).

An inmate must submit an appeal within thirty calendar days of "[t]he occurrence of the event or decision being appealed" or "[u]pon first having knowledge of the action or decision being appealed." *Id.* § 3084.6(c)(4). Under certain circumstances, an appeal will be accepted after the deadline. A late appeal may only be canceled where "the inmate or parolee had the opportunity to submit within the prescribed time constraints." *Id.* Further, "at the discretion of the appeals coordinator or third level Appeals Chief, a cancelled appeal may later be accepted if a determination is made that cancellation was made in error or new information is received which makes the appeal eligible for further review." *Id.* at § 3084.6(a)(3). Under exceptional

---

[2] Effective June 1, 2020, California Code of Regulations Title 15, sections 3084 through 3084.9 were repealed and replaced with renumbered and amended provisions at sections 3480 through 3487. *See Springs v. Raber*, 2022 WL 1004561, at *3 (S.D. Cal. Apr. 4, 2022). All the citations in this order are to the regulations in place in 2019, the relevant period for this action.

circumstances an appeal may be accepted for review beyond the 30-day deadline, for instance, when an inmate is medically incapacitated and unable to file an appeal. *Id.* at § 3084.6(a)(4). Further, "[a]dministrative remedies shall not be considered exhausted relative to any new issue, information, or person later named by the appellant that was not included in the originally submitted CDCR Form 602 (Rev. 08/09), Inmate/Parolee Appeal, which is incorporated by reference, and addressed through all required levels of administrative review up to and including the third level." Cal. Code Regs. tit 15, § 3084.1(b) (2019).

## ANALYSIS

### A.  Material Facts Regarding Exhaustion of Administrative Remedies

Following a thorough review of the evidence submitted, the Court finds these material facts are deemed undisputed, unless otherwise indicated.  Because Plaintiff did not submit a response to Defendants' Separate Statement of Undisputed Facts ("SSUF") as required by Local Rule 260(b), the Court may deem the facts asserted by Defendants in their SSUF undisputed unless otherwise contradicted by the pleadings. *See* Fed. R. Civ. P. 56(c).

- Since August 1, 2008, the California Department of Corrections and Rehabilitation (CDCR) Office of Appeals (OOA) has received, reviewed, and maintained all final-level appeals for non-health care issues.  (Doc. No. 38-3 at 2 ¶ 2).

- When an inmate appeal is received by the OOA, it is assigned a tracking log number and entered into a computer system.  (*Id.* ¶ 3).

- An "Appeal History Report" is available in the computer system for each offender.  The Appeal History Report includes the following information: the offender's first and last name, the offender's CDCR number, the appeal log number, the appeal issue, the date the appeal was received, the underlying grievance log number (which includes the acronym of the institution or parole region where the underlying grievance arose), the date the appeal is closed, and the final disposition of the appeal.  (*Id.*).

- All offender appeals are reviewed and screened in or screened out by the OOA.  An appeal is screened out (and not answered substantively) if it does not comply with the

9

regulations governing the appeal process. If an appeal is screened out, the offender is informed of the reason for the screen out and how the deficiency can be cured, if the regulations provide for a cure.  An appeal is screened in (and answered substantively) if it complies with the governing regulations.  The Appeal History Report includes appeals that were screened out or in; and, if screened out, the report includes the reason for the screen-out.  (*Id.* ¶ 4).

- Decisions by the OOA represent the final level of review in the Department's grievance and appeal process and are rendered on behalf of the Secretary of the Department.  (*Id.* ¶ 5).

- If filing a grievance before June 1, 2020, an offender was required to follow the procedures set forth in California Code of Regulations, title 15, sections 3084-85.  (*Id.* ¶ 6).

- Before June 2020, the administrative grievance process consisted of three levels of review, which the inmate initiated by submitting an "appeal"—the CDCR Form 602 – Inmate/Parolee Appeal—which is now referred to as a "grievance." (Doc. No. 38-4 at 1-2 ¶ 2).

- First- and second-level appeals were handled by staff located at the institution where the incident giving rise to the inmate complaint occurred, while third-level non-medical appeals were received and decided at the Office of Appeals located in Sacramento, California.  (*Id.*).

- For appeals submitted before June 2020, a substantive decision at the third level exhausted CDCR's administrative remedies.  (*Id.*).

- The OOA's records of appeals are maintained in the course of regularly conducted activities of the OOA, and making and maintaining records is a regular practice of those activities.  (Doc. No. 38-3 at 3 ¶ 7).

- A search was conducted at the institutional level Office of Grievances ("OOG") for any appeal submitted by Plaintiff containing allegations that Defendant Hosey violated Plaintiff's Eighth Amendment rights by failing to protect Plaintiff from an inmate assault

on April 7, 2019, including, but not limited to, opening Plaintiff's cell to inmate Price, allowing inmate Price to assault Plaintiff.  (Doc. No. 38-4 at 3-4 ¶ 9(a)–(c)).

- A search was conducted at the institutional level OOG for any appeal submitted by Plaintiff containing allegations that Defendant Mendoza violated Plaintiff's Eighth Amendment rights by failing to protect Plaintiff from an inmate assault on April 7, 2019, including, but not limited to, authorizing Defendant Hosey to open Plaintiff's cell to inmate Price.  (*Id*.).

- A search was conducted at the institutional level OOG for any appeal submitted by Plaintiff containing allegations that Defendant Espinoza violated Plaintiff's Eighth Amendment rights by failing to protect Plaintiff from an inmate assault on April 7, 2019, including, but not limited to, having an intimate relationship with inmate Price and rehiring inmate Price as a porter, which allowed him to assault Plaintiff.  (*Id*.).

- In CDCR 602 Log No. WSP-B-19-01089, dated April 7, 2019, Plaintiff alleged that an angry porter turned to the tower and demanded Plaintiff's cell be opened.  Shortly after, the cell was opened and Plaintiff quickly closed it.  The porter demanded the door be opened again, and it was.  The porter rushed in and assaulted Plaintiff.  Plaintiff explained that, since this inmate worked as a porter, it was known that Plaintiff's cell did not belong to the porter. This is because Plaintiff's cell has no "TV view" like all the other porters' cells.  The CDCR 602 did not assert any allegations related to Defendant Mendoza or Espinoza.  Nowhere in the grievance does Plaintiff allege that the tower officer walked over to Defendant Mendoza's office and nodded before opening his cell.  Further, Plaintiff did not allege that the porter had been reinstated by Defendant Espinoza after fighting with another inmate.  (Doc. No. 38-3 at 12, 14).

- The institution's response to the grievance only identified Plaintiff's issue with Defendant Hosey opening Plaintiff's cell door.  During Plaintiff's interview pursuant to the second-level response, Plaintiff was asked if Defendant Hosey was regularly assigned to his building, and he said "No."  Plaintiff admitted, "That officer is not the regular.  He didn't know us but he should have known that Price didn't live in my cell. I don't think he did it

on purpose, but he made a mistake.  The officer is young and he should learn from this mistake.  I think its bullshit that I got my ass beat for his mistake."  The interview summary did not mention any allegations related to Defendants Mendoza and Espinoza. The grievance was partially granted in that an inquiry into the allegations was conducted. The response informed Plaintiff that staff personnel matters are confidential and that he was required to appeal the determination to exhaust his administrative remedies.  (Doc. No. 38-4 at 4 ¶ 10(a), 12-18).

- Other than the grievance listed above, OOG located no other grievances submitted by Plaintiff regarding or related to allegations described above.  (*Id*. at 4 ¶ 11).

- Plaintiff appealed his grievance above to the OOA.  The appeal is identified as Appeal Log No. 1907696.  In Plaintiff's appeal, Plaintiff raised new issues concerning the April 7, 2019 incident, implying potential wrongdoing by Defendants Mendoza and Espinoza.  For example, Plaintiff asked why Defendant Hosey walked to Defendant Mendoza's window before opening Plaintiff's door, who reappointed inmate Price as a Porter, and why inmate Price bragged that he was often naked when Defendant Espinoza conducted inmate counts.  The OOA denied Plaintiff's appeal because it determined that Plaintiff's initial allegations were appropriately reviewed and evaluated by administrative staff.  The response notified Plaintiff that he added new issues and requests to the appeal and informed him that it was not an appropriate way to expand the appeal.  OOA also directed Plaintiff to the appropriate regulations.  (Doc. No. 38-3 at 3-4 ¶ 9, 11-19).

- No other appeals were received by the OOA during the relevant timeframe which contained any of the allegations described above.  (*Id*. at 4 ¶ 10).

**B.  Plaintiff's Exhaustion of his Eighth Amendment Failure to Protect Claim**

The basic facts concerning Plaintiff's exhaustion of administrative remedies are not in dispute.  Plaintiff filed a grievance regarding the April 7, 2019 incident stating in pertinent part:

> An angry porter was outside my locked cell yelling at me that he was going to kick my ass—very loud and repeated.  The officers should not open an inmate's cell unless he is sure that the inmate belongs in that cell—especially SNY.

The porter turned to the tower and loudly demanded the cell to be opened. Shortly, the cell was opened and I quickly closed it. The porter again yelled for the door to be [illegible], it was, and the porter rushed in and assaulted me. He tried to close the door but my hand was in the way – I made it out of my cell and down the steps.

Based on other events and the fact that this porter worked morning and night—it was known that this was not his cell. The cell has no TV view and all the porters are located right in front of the TV. This porter has bragged that officers tell him all the inmate charges so he can threaten them.

(Doc. No. 38-3 at 12, 14). It is undisputed that Plaintiff does not mention Defendants Mendoza or Espinoza or their alleged actions in the initial grievance. Nor did Plaintiff's grievance interview include any mention of either Defendant. Instead, Plaintiff first included allegations concerning Defendants Mendoza and Espinoza in his third-level appeal. Thus, Plaintiff has not complied with Section 3084.2(a) of Title 15, which requires an inmate to "list all staff member(s) involved and describe their involvement in the issue."

The two questions before the Court are: (1) whether Plaintiff establishes a genuine dispute of material fact as to whether administrative remedies were unavailable to him, therefore excusing his failure to adequately exhaust his administrative remedies; and if not, (2) whether Plaintiff's reference to Defendants Espinoza and Mendoza in his third-level appeal was sufficient to exhaust his administrative remedies as to them. For reasons set forth below, the Court concludes that it was not.

1.  Whether Administrative Remedies Were Available to Plaintiff

It is not disputed that Plaintiff availed himself of the administrative grievance process during his time at Wasco State Prison. From February to September 2019, he filed and exhausted to the third level another grievance related to his alleged loss of property (Log No. WSP-19-00545). (Doc. No. 38-4 at 4 ¶ 12, 20-47). Plaintiff also pursued the instant grievance through all three levels, including a grievance interview with Lieutenant Aceves on April 22, 2019. (Doc. No. 38-3 at 12-19).

Liberally construed, Plaintiff's argument is that WSP's administrative grievance process was unavailable to him for two reasons.

13

First, because he was not provided access to the inmate manual at WSP or properly advised as to grievance procedures, thus he was not aware of all relevant rules and requirements for filing grievances. (Doc. No. 41 at 3-4). Plaintiff cites to *Fordley v. Lizarraga* for the proposition that "administrative remedies were unavailable where a manual describing the complaint process was kept from inmates." *Fordley v. Lizarraga*, 18 F.4th 344, 352 (9th Cir. 2021), citing *Albino v. Baca*, 747 F.3d 1162, 1173-75 (9th Cir. 2014). However, the facts in *Albino* are readily distinguishable from those in the instant case. In that case, a Spanish-speaking county jail inmate asserted that he was

> never given any orientation at the jail, during which he could have been informed of a complaint process. He also declares that he has never seen the jail's personnel manual, a complaint box, or a complaint form. Finally, he declares that he repeatedly sought, and was denied, help from the prison staff . . . Staff members never told him that complaint forms were "available for any inmate who requests them" . . . and they never construed Albino's complaints as requests for such forms. Nor did staff members tell Albino that he could put in a complaint box, or give directly to them, a written complaint, even if not on an official form. Instead, staff members repeatedly told Albino that he should seek relief by talking to his criminal defense attorney.

747 F.3d at 1175-76.

Plaintiff does not cite to any portion of the record for his claim that he was not provided relevant grievance procedures and a copy of the inmate manual. Moreover, the record is undisputed that Plaintiff is a self-described well-educated individual who did not face any language barrier in navigating WSP's administrative grievance process and previously availed himself of that process by completing it through the third level of review. (*See* Doc. No. 38-4 at 12 ¶ 4; Doc. No. 41 at 9). Plaintiff implies that the actions of WSP officials rendered the administrative grievance unavailable under *Ross*, in which the Supreme Court stated that an inmate is excused from exhausting administrative remedies where the process is "so opaque that it becomes, practically speaking, incapable of use. In this situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." *Ross*, 578 U.S. at 643–44.

Plaintiff does not, however, specify any provision of the administrative grievance process that was "opaque" to him that he was not able to properly exhaust his administrative remedies.

Moreover, the Office of Appeals advised Plaintiff in its Third-Level Appeal Response that he had improperly included new issues in his appeal and was directed to the specific provisions of Title 15 that he violated.  (Doc. No. 38-3 at 18).  Accordingly, the Court does not find Plaintiff has met his burden of production to show that administrative remedies were unavailable to him based on WSP officials' alleged failure to provide him a copy of the inmate manual or inmate grievance procedures.

Second, Plaintiff contends administrative remedies were unavailable because in the minutes after the April 7, 2019 incident, a sergeant wrongly told Plaintiff that he had to complete the 602 form immediately or else forfeit the right to file a grievance; Plaintiff was thus forced to complete the grievance "sitting on [a medical exam table], without [his] glasses, [his] head pounding and the nurse stitching [his] eye and examining [his] head for other injuries."  (*Id*. at 3).  As a result, Plaintiff was unable to include all relevant details that he would have if he had not been pressured to complete the form immediately.  (*Id*.).

Plaintiff implies that the unnamed sergeant thwarted his efforts to fully describe the incident and comply with prison regulations when he forced Plaintiff to complete the grievance form under duress.  (Doc. No. 41 at 7-8).  Notably, the regulations provide Plaintiff with thirty (30) days to file a grievance.  Moreover, Plaintiff also failed to describe the involvement of Defendants Mendoza or Espinoza in his interview with Lieutenant Aceves on April 22, 2019, more than two weeks after the incident.  (*See* Doc. No. 38-3 at 16-17).  It was not until June 25, 2019 that Plaintiff raised the additional questions and allegations regarding Defendants Mendoza and Espinoza (*see id*. at 15), belying his claim that but for the Sergeant's intimidation, he would have included those details in the initial grievance and successfully exhausted his claims as to them.

For reasons set forth above, the Court finds that Plaintiff fails to carry his burden of production to show that the administrative grievance process was unavailable to him.  Thus, the Court turns to whether Plaintiff adequately exhausted his administrative remedies as to Defendants Espinoza and Hosey.

////

2.   Whether Plaintiff Exhausted his Administrative Remedies as to Defendants Mendoza and Espinoza

Under California regulations, "[a]dministrative remedies shall not be considered exhausted relative to any new issue, information, or person later named by the appellant that was not included in the originally submitted CDCR Form 602." 15 Cal. Code Regs. § 3084.1(b).  "But the regulations also contemplate that the involved staff member may be identified later in the appeal process if the inmate does not know the staff member's identity at the time of submitting the original appeal." *Silva v. Blagg*, 2019 WL 1744216, at *8 (C.D. Cal. Jan. 18, 2019) (denying motion for summary judgment as to two defendants who were not named in initial grievance because their identities were not known at the time but whose actions were described in the grievance), *report and recommendation adopted*, 2019 WL 3064467 (C.D. Cal. Mar. 13, 2019), citing 15 Cal. Code Regs. § 3084.2(a)(3); *see also Hernandez v. Hernandez*, 2015 WL 2374262, at *4-*5 (E.D. Cal. May 17, 2015) (rejecting argument that inmate's identification of officers who beat him later in the appeal process constituted improper addition of new issue because inmate provided all information available at time of original appeal), *report and recommendation adopted,* 2015 WL 3545630 (E.D. Cal. June 4, 2015).

Thus, in certain circumstances, courts have found that a plaintiff may exhaust his administrative remedies by later identifying individuals whose actions were described in the initial grievance but failed to name them.  Here, Plaintiff neither named Defendants Mendoza and Espinoza nor included any actions attributable to them.  And case law and applicable regulations are clear that "a prisoner does not exhaust administrative remedies when he includes new issues from one level of review to another." *Dawkins v. Butler*, 2013 WL 2475870, at *8 (S.D. Cal. June 7, 2013) (granting motion to dismiss on exhaustion grounds where second level appeal raised issues not described in initial grievance); *see also Shepherd v. Cornwell*, 2021 WL 3808889, at *5 (E.D. Cal. Aug. 26, 2021) (same), *report and recommendation adopted*, 2021 WL 4942836 (E.D. Cal. Oct. 22, 2021); *see* 15 Cal. Code Regs. § 3084.1(b).

Plaintiff contends that under the Ninth Circuit's holding in *Reyes v. Smith*, his failure to name all involved staff members was not necessarily fatal.  *Reyes* is distinguishable from the

instant case.  In that case, plaintiff filed a health care grievance regarding his institution's gradual

termination of his access to morphine for pain management.  810 F.3d 654.  The institution

denied Plaintiff's grievance and appeals and noted in its responses that the prison's Pain

Management Committee ("PMC") had "recommended against narcotics."  *Id*. at 656.  After

Plaintiff filed suit against two members of the prison's PMC and other prison officials, the district

court granted an exhaustion-based motion for summary judgment as to the two PMC members

because they had never been named in Plaintiff's health care grievances, contrary to Cal. Code

Regs. tit. 15 § 3084.2(a) (2015).  *Id*. at 656-57.

   The Ninth Circuit reversed, noting the explicit reference to the PMC in the institution's

responses in finding that Plaintiff's grievance "plainly put prison officials on notice of the nature

of the wrong alleged in his federal suit—denial of pain medication by the defendant doctors

[because] [p]rison officials . . . plainly knew that the Pain Management Committee, of which Drs.

Smith and Heatley and Smith were members, had decided Reyes should not receive the

medication . . . " *Reyes*, 810 F.3d at 659.  Thus, even though *Reyes* had not named the specific

defendants in his grievance and appeals, the Court found that the prison and those defendants

were on notice of the nature of Reyes' claims. The Ninth Circuit also held that where the prison

did not enforce a procedural rule, such as the requirement of naming all involved individuals, but

instead addressed a grievance on the merits, it could not later enforce that rule so long as it was

on notice of the claim.  *Id*. at 658.

   The instant action is distinguishable from *Reyes* for two reasons.  First, unlike in Reyes,

the involvement of Defendants Mendoza and Espinoza is not "easily identified" in Plaintiff's

grievance.  *Id*. at 658.  Instead, the original grievance only describes Inmate Price "turn[ing] to

the tower") (i.e. Officer Hosey) to ask that Plaintiff's cell door be opened and does not include

any facts to suggest that anyone other than the tower officer was responsible for opening

Plaintiff's cell door and facilitating the attack by Inmate Price.  (*See* Doc. No. 38-3 at 12, 14).

   Plaintiff's appeal did not merely identify individuals whose actions were previously

described in his grievance, as in *Silva* and *Hernandez*.  Rather, it raised new allegations

concerning Defendant Mendoza and Espinoza that were in no way referenced or identified in his

1   initial grievance or in Plaintiff's grievance interview with Lieutenant Aceves on April 22, 2019.

2   There is nothing in the grievance to suggest or imply that any other correctional staff was

3   involved in the incident; there is no reference to Defendant Espinoza's alleged favoritism toward

4   Inmate Price that allowed him to be reinstated as a porter or to a supervisor approving the tower

5   officer's actions.  Plaintiff does not dispute that he also made no reference to either Espinoza or

6   Mendoza in his grievance interview on April 22, 2019.  (Doc. No. 38-4 at 17-18; *see* Doc. No.

7   41).  Indeed, the institutional responses to Plaintiff's grievance do not indicate that WSP officials

8   were on notice of the involvement of any other staff beyond Defendant Hosey.  (Doc. No. 38-3 at

9   16-19).  Because only Defendant Hosey's actions were identified in the original grievance, the

10  record shows that Defendants Mendoza and Espinoza could not have been "easily identified" in

11  Plaintiff's initial grievance.

12          Second, unlike in *Reyes*, prison officials did not "opt not to enforce a procedural rule" as

13  to Defendants Mendoza and Espinoza.  *Reyes*, 810 F.3d at 658.  In *Reyes*, prison officials'

14  responses indicated they recognized Plaintiff's allegations against unnamed members of the Pain

15  Management Committee but did not enforce the Title 15 requirement that he name them in his

16  grievance.  *Id*.  Here, there is no indication in the responses from the WSP Office of Grievances

17  or the CDCR Office of Appeals that prison officials were aware of allegations against any other,

18  unnamed WSP employee.  (*See generally* Doc. No. 38-3 at 16-19).  Indeed, the Office of Appeals

19  expressly enforced the procedural rule.  Instead, the Office of Appeals' third-level appeal

20  response advised Plaintiff that he "has added new issues and requests to the appeal" and declined

21  to address those issues, citing pertinent sections of the California Code of Regulations and the

22  Department Operations Manual.  (Doc. No. 38-3 at 19).  The OOA response specifically cited

23  Section 3084.1, which includes the relevant provision that "[a]dministrative remedies shall not be

24  considered exhausted relative to any new issue, information, or person later named by the

25  appellant that was not included in the originally submitted CDCR Form 602."  15 Cal. Code

26  Regs. § 3084.1(b).  Thus, Plaintiff was on notice that he had not exhausted the additional claims

27  cited in his appeal and needed to take further action to do so, which he did not.  Significant,

28  CDCR regulations provided Plaintiff 30 days to file a new grievance regarding Defendants

1   Mendoza and Espinoza after he was advised of the procedural error. Cal. Code Regs. tit. 15, §

2   3084.8(b) (2019).  Plaintiff chose not to submit a new grievance related to these new allegations.

3                                   **CONCLUSION**

4         The Court finds the undisputed record demonstrates that an administrative grievance

5   process was available to Plaintiff during the time frame of April-September 201.  The evidence is

6   undisputed that Plaintiff's grievance did not put prison officials on notice as to Defendant

7   Mendoza or Espinoza's involvement in the alleged wrongdoing.  Consequently, Plaintiff failed to

8   exhaust his administrative remedies as to those individuals. Thus, Defendants Mendoza and

9   Espinoza are entitled to summary judgment and this case will proceed against Defendant Hosey.

10        Accordingly, it is **ORDERED**:

11        1.  Defendants' Exhaustion-Based Motion for Summary Judgment as to Defendants

12            Mendoza and Espinoza (Doc. No. 38) is **GRANTED**.

13        2.  Plaintiff's Eighth Amendment failure to protect claims against Defendants Mendoza

14            and Espinoza are dismissed due to Plaintiff's failure to exhaust his administrative

15            remedies as to Defendants Mendoza and Espinoza.

16        3.  The Clerk of Court shall correct the caption to reflect that this case remains pending

17            only against Defendant Hosey.

18        4.  The remaining deadlines in the Amended Case Management and Scheduling Order

19            (Doc. No. 34) shall govern this action.

20

21  Dated:    January 29, 2025

22                                          HELENA M. BARCH-KUCHTA
                                            UNITED STATES MAGISTRATE JUDGE
23

24

25

26

27

28